[Cite as *State v. Gowdy*, 2024-Ohio-1765.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230644 |
| | | TRIAL NO. B-2304311 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| DEMARCO GOWDY, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 8, 2024

*Melissa A. Powers,* Hamilton County Prosecuting Attorney*,* and *Judith Anton Lapp,* Assistant Prosecuting Attorney*,* for Plaintiff-Appellee,

*Brian T. Goldberg*, for Defendant-Appellant.

**BOCK, Presiding Judge.**

{¶1} Surveillance camera footage in a McDonald's parking lot showed defendant-appellant Demarco Gowdy engaged in a fight with another man where Gowdy used a firearm to bludgeon and shoot his adversary. Fortunately, he survived.

{¶2} Facing felonious-assault charges, Gowdy filed a notice of self-defense and prepared to go to trial. But after the trial court reviewed the surveillance footage and told Gowdy that it would not provide a self-defense jury instruction, Gowdy pleaded guilty to reduced charges. Gowdy now appeals, arguing his plea was coerced and therefore involuntary because the trial court prematurely ruled on the issue of self-defense without hearing all the evidence at trial.

{¶3} The trial court misstated the self-defense law by saying that Gowdy had "to prove something" before the trial court would provide a self-defense instruction. Further, the trial court erroneously weighed the evidence and prematurely ruled on the issue of self-defense before hearing all the evidence. But because we hold that Gowdy's decision to plead guilty to reduced charges was knowing, voluntary, and intelligent, we affirm the trial court's judgment.

## I.  Facts and Procedure

{¶4} In August 2023, Gowdy fought Mohammad Diol in a McDonald's parking lot. During the fight, Gowdy drew a firearm with which he bludgeoned and shot Diol, who sustained nonfatal injuries.

{¶5} The state indicted Gowdy on one count of felonious assault in violation of R.C. 2903.11(A)(2), with two firearms specifications, and one count of felonious assault in violation of R.C. 2903.11(A)(1) with a forfeiture specification. Gowdy pleaded not guilty and later filed a notice of self-defense.

2

### A. *The trial court viewed a video of the altercation*

{¶6} In October 2023, Gowdy appeared for a plea or trial setting where the state requested a continuance because Diol was still recovering in the hospital from his gunshot injuries. After Gowdy's attorney informed the court that he had not yet received surveillance video of the altercation, the court asked if Gowdy wanted the court to watch the video. The court noted, "Sometimes I shortcut a lot of trials by watching the video." Initially, Gowdy said no. After the court granted the state's request for a continuance, Gowdy requested a bond reduction and the trial court responded that it wanted to watch the video before ruling on the motion. Gowdy agreed, and the court took a break to review the footage. After reconvening, the court chose a November 2023 trial date to give Diol time to recover from his injuries.

{¶7} Gowdy asked for evidence that Diol was still in the hospital. The trial court cautioned Gowdy and replied:

THE COURT: We've seen the video.

THE DEFENDANT: Yes, sir.

THE COURT: The video does not look good for you. I'll tell you that right off the bat.

THE DEFENDANT: I understand.

THE COURT: I mean you shot an unarmed man, so it's on video.

THE DEFENDANT: He tried to take my gun off me while we was tussling in the back of my car.

THE COURT: You brought the gun to the fist fight. You actually brought a fist fight [sic] to the fist fight. You waited for him outside of a McDonald's.

THE DEFENDANT: I was Door Dashing.

THE COURT: We saw the Door Dash parking area. You weren't in the Door Dash area.

THE DEFENDANT: There weren't no more parking space.

THE COURT: Yes, there were. It's on the video. There was five available parking spaces. See, everything you're telling me you need to watch because it's all on video. There were five spaces available and you didn't get out to get any food. You waited for him to come out with his food and start the fight and you shot him.

THE DEFENDANT: I honestly --

THE COURT: If you want to have this conversation with me, that's between you and your attorney. Everything you're telling me is just digging a deeper hole.

{¶8}    The trial court then denied Gowdy's request to reduce bond.

**B.  *Gowdy pleaded guilty to reduced charges***

{¶9}    On the day of trial, Gowdy's attorney confirmed that Gowdy wanted to proceed with a jury trial. But before the trial started, the court reviewed with Gowdy his potential sentence, asked if Gowdy had watched the surveillance video, and then told Gowdy, "[Y]our attorney is asking me for a self-defense charge to the jury, which I don't know if I'm going to grant at this point, but we'll get to that in a moment." The court told Gowdy that a self-defense jury instruction required establishing certain elements. The court continued:

THE COURT: So after reviewing the video and seeing everything that occurred that day -- because the video was very clear -- I don't think

you're going to be able to meet your burden of proof on establishing the first cause of self-defense, that you did not start the altercation. That's just the first tier, that you did not start the altercation.

In viewing the video, you were parked outside the McDonald's. It looked like you were waiting for the victim to come out, and you approached him first.

He had food in his hand, he had no intention on [sic] getting into a fight that day, but it looks as though you started the fight.

And then you brought a gun to a fistfight, so I don't know -- even after you testify -- if you're going to be able to complete the elements of self-defense.

So I'm telling you that now so that you can make an informed decision that I probably won't give the instruction of self-defense.

{¶10} Gowdy argued with the trial court and provided his version of events. The trial court told Gowdy, "[Y]ou can't bring a gun to a fistfight. * * * You can't defend yourself by shooting him if the only weapon that he has is his fists." The court believed that Gowdy did not face a threat of serious harm because the video showed that Gowdy knocked Diol down twice and Diol "never got a punch in." Gowdy replied that he did not know if Diol had a weapon.

{¶11} The trial court and Gowdy disputed what the video depicted until the trial court suggested that they watch the video together "for the sole purpose as to whether or not I'm going to give the self-defense instruction." Gowdy's counsel noted that if the case went to trial, he would "make that request again for the record," to which the court replied: "Well, of course." The video was played in court.

5

{¶12}   When the court came back on the record, Gowdy had decided to plead guilty. As part of the plea deal, the state agreed to reduce Gowdy's charges to aggravated assault with a three-year gun specification and recommended a four-year aggregate sentence.

{¶13}   The trial court began the plea colloquy. When the trial court addressed Gowdy to ask if he was voluntarily entering the plea, Gowdy replied, "Yes, sir. I just feel like we should have left it up to the jury to decide if it was self-defense or not, but I understand." The trial court cautioned, "If you feel like I've coerced you in this way, then I won't accept your plea and we'll just have a jury trial." Gowdy responded by noting that the trial court was not going to give a self-defense instruction. The court replied, "[H]e has a right to argue against that."[1] Gowdy and the trial court discussed whether self-defense applied to Gowdy's case.

{¶14}   The trial court again explained that it would not accept the plea if Gowdy felt like the court had threatened Gowdy or made it difficult for him to make a decision. Gowdy responded:

> that's like just put me in a box. * * * there ain't no way, you know what
> I'm saying * * * I feel like the jury should decide if it was self-defense or
> not. That's just how I feel. But y'all are already ruling it out for the jury
> not to even know.

{¶15}   The trial court again told Gowdy that he could request a self-defense instruction, though "it's not guaranteed."

---

[1] It is unclear who "he" is, but from the context "he" is presumably Gowdy's attorney.

6

{¶16} The trial court acknowledged that it could not hear any audio in the video, which Gowdy argued demonstrated why the issue should have been left up to the jury. The trial court replied:

THE COURT: All right. I'm going to leave it up to the jury if you want, if that's what you want.

THE DEFENDANT: Well, I just want to know will they be instructed on self-defense?

THE COURT: No.

THE DEFENDANT: See, that's what I'm saying. So I'm put in a box again where I'm just going to be tried for if I shot him or not.

THE COURT: Right.

THE DEFENDANT: That's what I'm saying. So I'm in a box, so that's why I'm taking the plea. I'll take the plea.

{¶17} Later, Gowdy again protested not being able to argue self-defense. The court replied, "[W]ell, you're making it sound like we're coercing you into it, rather than assisting you in making a good decision."

{¶18} Gowdy consulted with his attorney and the trial court completed the plea colloquy, found Gowdy guilty, and imposed the agreed sentence of one year on the aggravated-assault charge and three years on the gun specification to be served consecutively to the assault charge for a total sentence of four years' incarceration.

## II.    Law and Analysis

### A. *First Assignment of Error: Involuntary Plea*

{¶19} In his first assignment of error, Gowdy argues that the trial court erred in accepting his guilty plea because Gowdy did not knowingly, intelligently, and

voluntarily enter the plea. Gowdy asserts that the trial court prematurely and incorrectly ruled on whether it would provide a self-defense instruction before hearing all the evidence at trial and that its ruling coerced him into pleading guilty.

### 1. Self-defense law

**{¶20}** A person's right to use force in self-defense is codified under R.C. 2901.05, which provides:

> A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense.

R.C. 2901.05(B)(1).

**{¶21}** A defendant is entitled to a self-defense jury instruction where there is evidence tending to support that (1) the defendant was not at fault in creating the situation leading to the use of force, (2) the defendant had a "bona fide belief" that the defendant was in "imminent danger of death or great bodily harm," from which he could not escape without the use of force, and (3) the defendant did not violate a duty to retreat. *State v. Palmer*, Slip Opinion No. 2024-Ohio-539, ¶ 23, quoting *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 14. A person has no duty to retreat "if that person is in a place in which the person has a lawful right to be." R.C. 2901.09(B).

**{¶22}** The defendant has the burden of production in support of a self-defense

8

claim. *Palmer* at ¶ 19. This burden is "de minimis and can be satisfied with the state's own evidence." *Id.* at ¶ 1. The defendant meets this burden of production "if the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant." *Messenger* at ¶ 25. Once the defendant meets this minimal burden of production, the burden shifts to the state to disprove self-defense beyond a reasonable doubt. R.C. 2901.05(B)(1).

{¶23} The trial court is in the best position to determine whether the defendant has met the burden of production, and its decision granting or denying a requested instruction is reviewed for an abuse of discretion. *Palmer* at ¶ 22. But importantly, "a trial court must consider only the adequacy of the evidence presented—not its persuasiveness." *Id.* at ¶ 21. The *Palmer* court emphasized that "[t]he question is not whether the evidence should be believed but whether the evidence, *if believed*, could convince a trier of fact, beyond a reasonable doubt, that the defendant was acting in self-defense." (Emphasis in original.) *Id.* In *Palmer*, the court held that the trial court abused its discretion in denying a self-defense claim where the trial court, believing that the defendant was "at fault" in starting the altercation, "looked at the persuasiveness of the evidence presented rather than the adequacy of the evidence presented. It improperly weighed the evidence and considered whether it found Palmer's evidence credible and believable." *Id.* at ¶ 22.

{¶24} The trial court improperly enhanced Gowdy's burden for receiving a self-defense instruction. The trial court stated that Gowdy had to "prove something first in order for me to give that instruction" and "I don't think you're going to be able to meet your burden of proof on establishing the first cause of self-defense, that you

did not start the altercation." Gowdy did not need to prove anything to receive the instruction. Instead, he simply needed to submit evidence which, if believed, would establish the elements of self-defense.

**{¶25}** And we agree with Gowdy that the trial court improperly weighed the limited evidence available to it before stating that it would not provide a self-defense instruction. The trial court stated that, in its view of the evidence, "[I]t looked like you were waiting for the victim to come out, and you approached him first. He had food in his hand, he had no intention on getting into a fight that day, but it looks as though you started the fight." The trial court weighed the limited evidence, made inferences against Gowdy, and determined that Gowdy could not prove a self-defense claim. Whether the surveillance video made Gowdy's version of events not credible was irrelevant to whether Gowdy had met his burden of production. The trial court discounted Gowdy's statements and used the surveillance video to effectively cross-examine Gowdy about what happened during the altercation.

**{¶26}** Although the trial court misstated the self-defense law and prematurely indicated it would not provide a self-defense instruction, that does not require reversal in this case because Gowdy chose to plead guilty.

### 2. Gowdy's plea was voluntary

**{¶27}** When defendants waive their rights to a jury trial and plead guilty, they also waive any challenge to the trial court's pretrial rulings. *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 83; *see State v. Montgomery*, 2d Dist. Montgomery No. 21508, 2007-Ohio-439, ¶ 19 ("A guilty plea waives any error in the proceedings that does not implicate the validity of the guilty plea."). When defendants

plead guilty, they are limited on appeal to challenging only the validity of the plea itself. *Id.*

{¶28} "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 10. Crim.R. 11(C) governs the process under which a trial court accepts a guilty plea to a felony. Before accepting a plea, the trial court must personally address the defendant to ensure that the defendant is entering into the plea voluntarily and "engage the defendant in a detailed colloquy before accepting his or her plea." *Bishop* at ¶ 11; Crim.R. 11(C)(2)(a)-(c). A guilty plea induced by promises, threats, or coercion is involuntary and void even if the trial court otherwise complies with Crim.R. 11(C)'s requirements. *State v. Jacobs*, 1st Dist. Hamilton No. C-190154, 2020-Ohio-895, ¶ 4, citing *State v. White*, 2017-Ohio-287, 81 N.E.3d 958, ¶ 8 (8th Dist.).

{¶29} In *Jacobs*, this court held that a defendant's guilty plea was not coerced after the trial court denied the defendant's motion for a continuance of his trial where the trial court offered the defendant additional time to consider the plea and assured the defendant that a trial was still available. *Jacobs* at ¶ 5, 8. The court noted that the defendant's statements during the plea colloquy that he felt "bombarded," wished to "rekindle the process anew," and wanted a continuance represented the defendant's dissatisfaction with choosing between pleading guilty or "gambling on heftier sanctions at trial, rather than coercion." *Id.* at ¶ 8.

{¶30} Other courts have held that erroneous denials of pretrial motions do not provide grounds to challenge a guilty plea as involuntary. *See Kaiser v. State*, 1983 OK CR 156, 673 P.2d 160, ¶ 5 ("An incorrect pretrial ruling is not grounds for reversal * *

*. Once again we emphasize that after the petitioner stated he felt he was being coerced by virtue of the trial court's ruling, the matter was ordered to trial. The petitioner then stated that he understood the ruling, and desired to enter a plea of guilty. He further stated that he knew and understood his rights."); *see also State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 93 (holding that the trial court's erroneous denial of one of the defendant's seven motions in limine did not establish that the defendant's jury waiver was involuntary). Gowdy cites no cases, and we have been unable to locate any, in which an incorrect pretrial ruling rendered a guilty plea that otherwise complied with Crim.R. 11(C) (or an equivalent criminal rule) involuntary.

{¶31} The record shows that on two separate court dates, the trial court stated that Gowdy would not receive a self-defense instruction if he went to trial. Most of the trial court's statements regarding the availability of a self-defense claim indicated that the court's rulings were preliminary—the trial court stated that Gowdy's attorney would still be able to argue for a self-defense instruction at trial. During the actual plea colloquy, however, the trial court appears to have definitively ruled on Gowdy's request when it answered "no" to Gowdy's renewed question of whether the court would provide the instruction.

{¶32} While Gowdy argues that he was coerced into accepting a plea by the trial court's ruling on self-defense, the record does not support this contention. Although Gowdy repeatedly noted his disagreement with the trial court's ruling, Gowdy expressly stated that he was entering the plea voluntarily. And each time Gowdy protested about the self-defense instruction, the trial court stopped the colloquy, asked Gowdy if he felt coerced to plead guilty, and assured Gowdy that he

could still go to trial. Gowdy was also given time to consult with his attorney. Knowing that he had the right to proceed to trial, Gowdy chose to plead guilty and accept a reduced sentence rather than risk going to trial, being denied a self-defense instruction, and being convicted on greater charges.

**{¶33}** "Defendants often face difficult, if not gut-wrenching, decisions regarding whether to accept a plea deal. The challenge of reaching that decision, however, does not automatically render it the product of coercion." *Jacobs*, 1st Dist. Hamilton No. C-190154, 2020-Ohio-895, at ¶ 9. While Gowdy might have felt boxed in by the trial court's ruling, Gowdy's decision to plead guilty was a voluntary choice between his two options of going to trial and appealing or pleading guilty to reduced charges. The trial court's misstating the self-defense law does not render Gowdy's plea involuntary.

### 3. Gowdy failed to argue that the trial court's misstating his potential sentence caused prejudice

**{¶34}** Gowdy points out that the trial court overstated his potential maximum sentence. After Gowdy's attorney stated that Gowdy wanted to go to trial, the trial court stated, "You understand that you're looking at 11 years on each count, total of 22 years, plus two gun specs; is that right? * * * Six years on the gun[] specs. So you're looking at 28 years." Gowdy asserts that, had he been convicted on all counts and specifications in the indictment, the trial court would have been required to merge both counts one and two and the two gun specifications, rendering his maximum sentence 14-to-19-and-one-half years.

**{¶35}** A defendant may be convicted for multiple offenses based on the same conduct "if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately,

13

or (3) the conduct shows that the offenses were committed with separate animus." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 13; R.C. 2941.25(B).

**{¶36}** Counts one and two would not have merged because they charged Gowdy with separate acts resulting in separate and identifiable harms: (1) striking Diol with the handgun, and (2) shooting Diol with the handgun. *See Ruff* at ¶ 26 (stating offenses of dissimilar import exists "if the harm that results from each offense is separate and identifiable."). Gowdy was therefore facing a potential maximum sentence of 22 years on counts one and two.

**{¶37}** The indictment included a three-year firearm specification and a one-year firearm specification, both attached to count one. Had Gowdy been convicted of both specifications related to count one, the trial court could have sentenced him on only one of the specifications. R.C. 2929.14(B)(1)(a) ("if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in section 2941.141, 2941.144, or 2941.145 of the Revised Code, the court shall impose on the offender one of the following prison terms"). With the three-year specification, Gowdy's maximum sentence was 25 years, rather than 28 years as stated by the trial court.

**{¶38}** But Gowdy has not argued that he was prejudiced by this error. *See State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 16 ("a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)."). Indeed, Gowdy does not definitively argue that the trial court's misstatement of the total potential sentence affected his decision to enter a guilty plea. Instead, Gowdy states that the trial court's incorrect statements about his sentence "may have also

14

improperly influenced his decision to enter a plea of guilty" and suggests, "perhaps his decision would have been different." These statements fail to argue prejudice and it is not the role of this court to formulate a prejudice argument on Gowdy's behalf. *See State v. Enyart*, 2023-Ohio-3373, 224 N.E.3d 1203, ¶ 22 (10th Dist.).

**{¶39}** We overrule Gowdy's first assignment of error.

### B. *Second Assignment of Error: Right to a Jury Trial*

**{¶40}** In his second assignment of error, Gowdy argues that the trial court denied him his right to a jury trial under the Sixth Amendment to the United States Constitution and Article I, Section 5 of the Ohio Constitution. Gowdy asserts that he had a constitutional right to have a jury determine whether he acted in self-defense. Other than this assertion, Gowdy did not develop this argument.

**{¶41}** Courts presume that a written jury waiver is knowing, intelligent, and voluntary. *Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, at ¶ 93, citing *State v. Bays*, 87 Ohio St.3d 15, 19, 716 N.E.2d 1126 (1999). In *Belton*, the Supreme Court of Ohio held that a trial court's erroneous denial of one of the defendant's seven motions in limine did not rebut the presumption that the defendant's jury waiver was voluntary. *Belton* at ¶ 93.

**{¶42}** Gowdy signed a written jury waiver. As such, we presume the waiver was knowing, intelligent, and voluntary. And as noted above, the trial court stopped the plea colloquy multiple times to assure Gowdy that he could still proceed with a jury trial. There is nothing in the record to show that Gowdy's waiver of his right to a jury trial was involuntary. We overrule Gowdy's second assignment of error.

### III. <u>Conclusion</u>

**{¶43}** For the foregoing reasons, we overrule the assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.