[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Gowdy*, Slip Opinion No. 2025-Ohio-5575.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5575

THE STATE OF OHIO, APPELLEE, *v.* GOWDY, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Gowdy*, Slip Opinion No. 2025-Ohio-5575.]**

*Criminal law—Crim.R. 11(C)(2)— Trial court's misstatements of law about Ohio's self-defense statute and premature pretrial ruling on requested self-defense jury instruction did not render otherwise valid guilty plea unknowing, unintelligent, or involuntary—Court of appeals' judgment affirmed.*

(No. 2024-0882—Submitted June 24, 2025—Decided December 17, 2025.)

APPEAL from the Court of Appeals for Hamilton County, No. C-230644, 2024-Ohio-1765.

_____

KENNEDY, C.J., authored the opinion of the court, which FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ., joined.

**KENNEDY, C.J.**

{¶ 1} This discretionary appeal from a judgment of the First District Court of Appeals presents the issue whether an otherwise valid guilty plea and jury waiver are rendered unknowing, unintelligent, or involuntary by a trial court's misstatements of law about Ohio's self-defense statute, R.C. 2901.05(B), and premature pretrial ruling on a requested self-defense jury instruction. The answer is no.

{¶ 2} When a trial court complies with the requirements set out in Crim.R. 11, misstatements of law or premature pretrial rulings on ancillary issues, even if erroneous, do not invalidate an otherwise valid plea. Because neither error here—assuming they were errors—rises to the level of a Crim.R. 11 violation, neither is sufficient to warrant setting aside appellant Demarco Gowdy's guilty plea.

{¶ 3} We therefore affirm the judgment of the First District.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 4} Although the events leading up to the altercation at issue are unclear, surveillance footage of a McDonald's parking lot shows Gowdy fighting with another man on August 31, 2023. The State alleged that as the altercation progressed, Gowdy drew his firearm, bludgeoned the victim, and shot him. Thereafter, on September 8, 2023, Gowdy was indicted on two counts of felonious assault under R.C. 2903.11(A)(2) and (1), respectively—both second-degree felonies. The first count included two firearm specifications.

{¶ 5} On November 16, 2023, Gowdy's counsel submitted to the trial court a proposed partial jury instruction which included a self-defense instruction. The morning of trial, November 20, the court responded to the proposed self-defense jury instruction with reservation, stating: "I don't know if I'm going to grant that at this point . . . Because I watched the video, and once I watch the video again at trial, I don't know if self-defense is going to qualify. But we'll talk about that with your counsel. He'll make that argument. Because it is not automatic." After consulting

with his counsel, James Costin, Gowdy discussed the requested instruction with the court:

MR. COSTIN: Mr. Gowdy still wants to proceed to trial. He feels he has some things I believe he would—I don't know if they're in the nature of questions or statements regarding the Court's decision that we discussed off the record about him not—

THE COURT: Does he want to ask me those questions or do[es] he just want to tell it to the jury?

MR. COSTIN: I think he wants to ask you, Judge.

THE COURT: Okay. That's fine. He can ask me any question he wants.

THE DEFENDANT: So as far as—because what he said to me is that—

THE COURT: Well, let me start. So then you ask me questions after I start.

So you are alleging that you acted in self-defense.

THE DEFENDANT: Yes, sir.

THE COURT: So you have to satisfy certain elements in order to get me to give the jury the instruction for self-defense.

After you allege self-defense, then the State has the burden of proving that it was not in self-defense, but you have to prove something first in order for me to give that instruction. You understand?

THE DEFENDANT: Yes, sir.

THE COURT: Then that burden shifts to the State.

So after reviewing the video and seeing everything that occurred that day—because the video was very clear—I don't think

you're going to be able to meet your burden of proof on establishing the first cause of self-defense, that you did not start the altercation. That's just the first tier, that you did not start the altercation.

. . .

. . . [S]o I don't know—even after you testify—if you're going to be able to complete the elements of self-defense.

So I'm telling you that now so that you can make an informed decision that *I probably won't give the instruction of self-defense*.

(Emphasis added.)

{¶ 6} Gowdy and the trial court further discussed the particulars of the altercation and then decided to watch the video together in open court.

{¶ 7} After a lunch recess, the trial court indicated its understanding that Gowdy would change his not-guilty plea to a plea of guilty to an amended charge. The prosecutor informed the court that, with respect to Count One, Gowdy would enter a guilty plea to an amended charge of aggravated assault—a fourth-degree felony, *see* R.C. 2903.12(A)(1) and (B)—and would agree to the three-year firearm specification attached to that charge. The State would dismiss Count Two, and Gowdy agreed not to oppose the State's recommended four-year aggregate sentence.

{¶ 8} The trial court then continued the plea colloquy:

THE COURT: Okay. All right. Mr. Gowdy, you understand that a plea of guilty is a complete admission of guilt, and that once you enter a plea of guilty I will find you guilty and sentence you accordingly?

THE DEFENDANT: I understand.

4

THE COURT: All right. Are you entering this plea voluntarily?

THE DEFENDANT: Yes, sir. I just feel like we should have left it up to the jury to decide if it was self-defense or not, but I understand.

THE COURT: Okay. If that's what you want to do, you know, I have to let you do it. I mean, but there's no but. There's no but. If you feel like I've coerced you in this way, then I won't accept your plea and we'll just have a jury trial.

THE DEFENDANT: But you're not going to allow for the self-defense jury instruction, so—

THE COURT: Well, I mean, but [the prosecutor] has a right to argue against that.

{¶ 9} Gowdy continued to argue why he ought to be entitled to the self-defense jury instruction. The trial court again informed Gowdy that he had the right to go to trial:

THE COURT: I mean, but again, if you feel that I've threatened you in any way or made it difficult for you to make a decision, I need to know that, because if you feel that way then I have to give you your right to a jury trial, but knowing that *you're not going to get the jury instruction that you want*.

THE DEFENDANT: So without that jury instruction then I'm just going to be tried based on—

THE COURT: On exactly what you did.

THE DEFENDANT: Yeah, exactly. I just feel like that's like just put me in a box. They ain't no—there ain't no way, you know what I'm saying, just like almost put in a box.

So I prove that I shot him, so but y'all not taking the circumstances at hand, you know what I'm saying. So that's how I feel.

I feel like the jury should decide if it was self-defense or not. That's just how I feel. But y'all are already ruling it out for the jury not to even know.

THE COURT: I mean, because whatever I do, if I give an instruction, [the prosecutor is] going to want another instruction stating that it's not self-defense. Okay?

THE DEFENDANT: I understand.

THE COURT: Now you're going from what you guys agreed to for four years to double digits. You understand?

THE DEFENDANT: Yes, sir.

THE COURT: I mean, again, it's your life, you have to decide what's best for you. I'm not going to force you into this if this is not what you want to do.

That's why I do want to make sure that it is knowingly that you're entering into this plea, voluntarily that you're entering into this plea.

If there is any way you feel like you are coerced, other than me telling you what the law is, I mean, I'm just telling you what the law is.

THE DEFENDANT: I just feel like I was just put in a box, man. I think honestly. But at the same time I'm not trying to keep— prolong the situation.

6

I'm just—I'm exhausted, bruh. Like I'm just physically and mentally exhausted.

(Emphasis added.)

{¶ 10} Gowdy persisted in explaining his version of events and reasserted that the self-defense instruction should be given to the jury. The colloquy continued:

THE COURT: Right. So even though you're allowed to ask me for that instruction, it's not guaranteed. It's based off of the totality of the circumstances; otherwise, anybody can ask me to put anything in those jury instructions.

And [the prosecutor has] a right to say that it's not applicable in your case for several reasons.

I don't know if you saw him, but when you saw him, you could have got back in your car. So they're going to bring all of that up, you know, that you could have just got right back into your car.

THE DEFENDANT: And as well as he could have just stayed going to his designated destination.

THE COURT: Well, see, I don't know what—see, I couldn't hear him, right?

THE DEFENDANT: So there's—that's why I said a lot of—that's why I say we—in this case, this situation, we most definitely should have left it up to the jury to decide if it was self-defense or not.

THE COURT: All right. I'm going to leave it up to the jury if you want, if that's what you want.

THE DEFENDANT: Well, I just want to know *will they be instructed on self-defense?*

THE COURT: *No.*

THE DEFENDANT: See, that's what I'm saying. So I'm put in a box again where I'm just going to be tried for if I shot him or not.

THE COURT: Right.

THE DEFENDANT: That's what I'm saying. So I'm in a box, so that's why I'm taking the plea. I'll take the plea.

(Emphasis added.)

{¶ 11} Thereafter, the trial court confirmed that Gowdy understood that pleading guilty would waive several constitutional rights to which he would be entitled if he chose to go to trial, including his right to a jury trial. The court also reviewed several issues related to Gowdy's sentence, including postrelease control and credit he would get for time he had already served while awaiting trial. Gowdy then pled guilty to the reduced charge of aggravated assault.

{¶ 12} However, during discussion of the three-year firearm specification attached to the charge, Gowdy again raised the self-defense-instruction issue, stating: "I'm in a box, man. Like I said, I'm in a lose-lose situation if I can't prove—if I'm not able to prove myself in self-defense. . . . It's like I dang near got to plea to whatever y'all give me and go wherever y'all need to go." The trial court responded: "Well, you're making it sound like we're coercing you into it, rather than assisting you in making a good decision." Gowdy then consulted with his counsel and agreed to the imposition of the firearm specification.

{¶ 13} The trial court sentenced Gowdy to one year for the aggravated-assault offense and three years for the firearm specification, for an aggregate sentence of four years in prison.

{¶ 14} Gowdy appealed to the First District, claiming that the trial court erred to his prejudice when it accepted his guilty plea and prevented him from presenting his self-defense argument to a jury. The appellate court disagreed, holding that the trial court's errors—specifically, its misstatements about Ohio's self-defense statute, R.C. 2901.05(B), and its premature indication that it would not provide a self-defense instruction at trial—did not render the plea involuntary, unintelligent, or unknowing. 2024-Ohio-1765, ¶ 3, 26, 42 (1st Dist.). The First District therefore upheld Gowdy's guilty plea and jury waiver and affirmed the trial court's judgment. *Id*. at ¶ 43.

{¶ 15} Gowdy, acting pro se, appealed to this court, and we agreed to consider the following two propositions of law:

> I. A guilty plea must be vacated when it is not made knowingly, voluntarily, and intelligently because the trial court coerced the defendant into entering a plea of guilty by telling him prior to trial . . . that [the court] would not give a jury instruction on self-defense without having heard all the evidence.

> II. The trial court erred to the prejudice of Mr. Gowdy by denying him his constitutional right to a jury trial.

*See* 2024-Ohio-3313. We then appointed counsel to represent Gowdy. 2024-Ohio-3399.

## II. LAW AND ANALYSIS

{¶ 16} As a preliminary matter, we note that to enter his plea, Gowdy signed both the plea agreement and a jury-waiver document. But the existence of two separate documents does not require us to treat them separately. In this case, the jury waiver is the natural consequence of the guilty plea: "by the plea the defendant

is waiving the right[] to jury trial," Crim.R. 11(C)(2)(c). So, by assessing the validity of the guilty plea, we also assess the validity of the jury waiver.

{¶ 17} It has long been recognized that "a guilty plea is a grave and solemn act to be accepted only with care and discernment." *Brady v. United States*, 397 U.S. 742, 748 (1970). This is because "[t]he plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights," in exchange for the government's "'offering substantial benefits in return for the plea.'" *United States v. Mezzanatto*, 513 U.S. 196, 209-210 (1995), quoting *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978).

{¶ 18} A defendant's decision to enter a guilty plea must be knowing, intelligent, and voluntary. *State v. Dangler*, 2020-Ohio-2765, ¶ 10. And "[f]ailure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 1996-Ohio-179, ¶ 7. A court "shall not accept a plea of guilty or no contest without first" ensuring that the defendant's plea is voluntary and that the defendant understands the charges, the maximum penalty involved, and the effect of the plea, including its effect on the defendant's rights. Crim.R. 11(C)(2).

## A. Standard of Review

{¶ 19} When reviewing guilty pleas, we focus on "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler* at ¶ 12, citing *State v. Veney*, 2008-Ohio-5200, ¶ 15-16, *State v. Clark*, 2008-Ohio-3748, ¶ 26, and *State v. Miller*, 2020-Ohio-1420, ¶ 19. "[A] defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made" is generally not entitled to have his plea vacated unless he demonstrates that he was prejudiced by the failure of the trial court to comply with the provisions of Crim.R. 11. *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 20} The test for prejudice is "'whether the plea would have otherwise been made.'" *Dangler* at ¶ 16, quoting *Nero* at 108. And prejudice must be established "'"on the face of the record."'" *Id*. at ¶ 24, quoting *Hayward v. Summa Health Sys./Akron City Hosp.*, 2014-Ohio-1913, ¶ 26, quoting *Wagner v. Roche Laboratories*, 1999-Ohio-309, ¶ 21.

{¶ 21} However, this court has held that there are two instances in which a defendant is excused from the burden of demonstrating prejudice: (1) when a trial court "fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c)," *Clark* at ¶ 31; and (2) when a trial court "complete[ly] fail[s] to comply with" a requirement of Crim.R. 11, *State v. Sarkozy*, 2008-Ohio-509, ¶ 22. Aside from these two exceptions, a defendant claiming that his guilty plea was not knowingly, intelligently, and voluntarily entered is required to show prejudice. *Dangler*, 2020-Ohio-2765, at ¶ 16.

{¶ 22} Therefore, in undertaking this review, the questions to be answered are:

> (1) has the trial court complied with the relevant provision[s] of [Crim.R. 11]? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Id*. at ¶ 17.

## B. Crim.R. 11(C) Requirements

{¶ 23} "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *Veney*, 2008-Ohio-5200, at ¶ 8. The court "must make the determinations and give the warnings required by

Crim.R. 11(C)(2)(a) and (b)." *Id.* at ¶ 13. The court must also notify the defendant of his or her constitutional rights enumerated in Crim.R. 11(C)(2)(c). *Id.* at ¶ 13.

{¶ 24} Specifically, Crim.R. 11(C)(2) requires the following:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**C. Crim.R. 11(C) Compliance**

{¶ 25} Gowdy does not claim that the trial court failed to comply with any particular section of Crim.R. 11. Rather, he challenges his guilty plea by asserting generally that it was not entered (1) knowingly and intelligently or (2) voluntarily.

{¶ 26} According to Gowdy, the trial court first erred by mischaracterizing his burden under the self-defense statute and the court's role in evaluating evidence presented under that law. These misstatements, he contends, caused him to inaccurately believe that going to trial would be "futile," leading him to enter an unknowing and unintelligent plea.

{¶ 27} Gowdy also alleges that the court made a premature pretrial ruling on whether he would receive the requested self-defense jury instruction. He argues that this "preemptive refusal" to give the instruction coerced him into entering a guilty plea, rendering that plea involuntary.

*1. Knowing and Intelligent*

{¶ 28} Gowdy first argues that the trial court's misstatements of law about Ohio's self-defense statute, R.C. 2901.05(B), rendered his guilty plea unknowing and unintelligent. He asserts that *Engle*, 1996-Ohio-179, and *Clark*, 2008-Ohio-3748, establish that a guilty plea induced by a misstatement of law is not knowing or intelligent even when entered in the presence of defense counsel and after a Crim.R. 11 colloquy. Neither case, however, stands for this proposition.

{¶ 29} In *Engle*, the defendant pled no contest to several counts in exchange for the dismissal of all remaining counts while under a mistaken belief regarding her right to appeal most of the trial court's adverse rulings. *Engle* at ¶ 3-4, 9-10. Before Engle entered her no-contest plea, the prosecutor told the court that under the plea agreement, Engle would be permitted to appeal the court's earlier rulings against her. *Id*. at ¶ 3. The court failed to correct that misstatement, and then at the sentencing hearing, the judge implicitly affirmed the prosecutor's comment regarding Engle's supposed right, advising her: "'I want to be sure that you

understand that you have the right to appeal the decision of this Court.' " *Id.* at ¶ 10.

{¶ 30} Crim.R. 11(C)(2) requires that the defendant "understand[] the effect of the plea of guilty or no contest." This included its effects on Engle's right to appeal. The prosecutor's misstatement of law and the trial court's failure to correct the misstatement led to Engle's misunderstanding of the effect of her plea on her right to appeal. Therefore, her plea was not knowingly and intelligently made, and the court failed to comply with Crim.R. 11(C)(2). *Engle* at ¶ 10-12.

{¶ 31} In *Clark*, the trial court erroneously told the defendant that he would be subject to a limited period of postrelease control after serving at least 28 years of his prison sentence and that if he violated his postrelease control, he would be subject to only nine months in prison for each violation. 2008-Ohio-3748 at ¶ 17-20. In reality, Clark was *not* eligible for postrelease control because his crime was an unclassified felony. Instead, he would be eligible only for parole, which was not guaranteed, would last longer than postrelease control, and carried more significant consequences for violations. *Id*. at ¶ 36-37.

{¶ 32} On appeal, Clark argued that his guilty plea was not knowing, intelligent, and voluntary because the trial court failed to comply with Crim.R. 11(C)(2)(a) when it incorrectly stated he would be subject to postrelease control. *Id.* at ¶ 4. This court agreed: the trial court failed to substantially comply with Crim.R. 11(C)(2)(a) because, by misstating the law regarding Clark's sentence, it failed to ensure that Clark understood "the nature of the charges and . . . the maximum penalty involved," Crim.R. 11(C)(2)(a). *Clark* at ¶ 39-40. We reversed and remanded the case to the court of appeals to determine whether Clark was prejudiced by the trial court's erroneous statements. *Id.* at ¶ 41.

{¶ 33} Neither *Engle* nor *Clark* stand for the proposition that a trial court's misstatement of law made during a plea colloquy necessarily renders a plea

unknowing and unintelligent. Both decisions hinged on trial-court errors that amounted to a failure to comply with the requirements of Crim.R. 11.

{¶ 34} In this case, by contrast, Gowdy understood the consequences of his guilty plea. The trial court's misstatements of law did not affect Gowdy to the point that they obscured his knowledge of the charges against him or the rights he was waiving. The court ensured that Gowdy understood the effects of his plea, including that he was waiving his right to a jury trial, and gave him multiple opportunities to confer with counsel when he appeared hesitant. Therefore, unlike in *Engle* and *Clark*, the plea was knowing and intelligent and the trial court complied with the requirements of Crim.R. 11.

{¶ 35} The only challenge that remains is whether Gowdy entered his plea voluntarily.

*2. Voluntary*

{¶ 36} Gowdy also argues that the trial court coerced him into pleading guilty by prematurely indicating that it would deny his request for a self-defense jury instruction. Under Crim.R. 11(C)(2)(a), a trial court must determine that the defendant is making the plea voluntarily before accepting a guilty or no-contest plea.

{¶ 37} To be valid, a defendant's plea must "be the voluntary expression of his own choice." *Brady*, 397 U.S. at 748. "[A]gents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." *Id.* at 750. A mere claim of coercion is not enough to render a plea involuntary. " 'The record must show, or there must be an allegation and evidence which show, that an accused' " did not voluntarily enter his plea of guilty. *Boykin v. Alabama*, 395 U.S. 238, 242-243 (1969), quoting *Carnley v. Cochran*, 369 U.S. 506, 516 (1962); *see also Brady* at 749 ("The voluntariness of [a] [guilty] plea can be determined only by considering all of the relevant circumstances surrounding it.").

{¶ 38} Gowdy relies on *State v. Byrd*, 63 Ohio St.2d 288 (1980), to show coercion, but this reliance is also misplaced. In that case, during a hearing to determine whether Byrd was competent to stand trial, the judge began exerting pressure on Byrd, asking that he "'get in touch with [his] parents, and have [his] parents get in touch with [the judge].'" *Id.* at 289. A few days later, members of Byrd's family met with the judge, and the judge urged them to convince Byrd to plead guilty. *Id.*

{¶ 39} Byrd then met with the judge again, along with a sheriff's deputy, a probation officer, and an assistant prosecutor. *Id.* at 290. During that meeting, the judge actively negotiated a plea deal on Byrd's behalf, personally pressured him into entering the plea, and enlisted one of Byrd's family friends to help persuade him. *Id.* Byrd was not given the opportunity to discuss these events with his attorneys. *Id.*

{¶ 40} In this case, the judge did not participate in negotiating the plea. Most of the relevant events took place during the plea colloquy, throughout which the trial court repeatedly sought to ensure that Gowdy did not feel coerced into entering the plea and indicated that he had a right to go to trial if he wished. The judge also stated that if the court was not satisfied with the voluntariness of Gowdy's plea, it could not accept it. And, unlike Byrd, Gowdy conferred with counsel multiple times. Each time, Gowdy continued the plea colloquy.

{¶ 41} Gowdy may have been dissatisfied with his choices—either plead guilty to one fourth-degree felony or go to trial, request a self-defense jury instruction, and risk two second-degree felony convictions. But dissatisfaction with his predicament did not render the plea involuntary. *See Brady*, 397 U.S. at 750-751 (finding that a guilty plea is not coerced "if influenced by the fear of a possibly higher penalty for the crime charged if a conviction is obtained after the State is put to its proof").

{¶ 42} The record does not establish that Gowdy was unable to rationally weigh the advantages of going to trial against the advantages of pleading guilty or that the judge's conduct was so overbearing that it clouded Gowdy's choice. So, Gowdy's plea was entered voluntarily and in accordance with the requirements of Crim.R. 11(C)(2)(a).

### D. Prejudice

{¶ 43} Because there was no failure on the part of the trial court to comply with Crim.R. 11, we need not reach the question whether Gowdy was prejudiced by the court's potential misstatements of law and premature pretrial ruling.

### III. CONCLUSION

{¶ 44} Gowdy faced a difficult decision: plead guilty to a lesser charge or go to trial and risk receiving a potentially longer sentence. Gowdy made his choice. He may not now assert that the trial court's misstatements of law, which had no effect on the Crim.R. 11 colloquy, rendered his plea unknowing and unintelligent and that the court's expressions of its disinclination to give a self-defense jury instruction coerced him into pleading guilty, thereby rendering his plea involuntary. Gowdy was free to go to trial and request the self-defense jury instruction then, but he did not. The trial court complied with the requirements of Crim.R. 11, and Gowdy has not shown otherwise.

{¶ 45} Accordingly, we affirm the judgment of the First District Court of Appeals.

Judgment affirmed.

_____

Elizabeth R. Miller, Ohio Public Defender, and Russell Patterson, Assistant Public Defender, for appellant.

Connie Pillich, Hamilton County Prosecuting Attorney, and Judith Anton Lapp and Ronald W. Springman Jr., Assistant Prosecuting Attorneys, for appellee.

_____