[Cite as *State v. Craft*, 2026-Ohio-1205.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ERVIN TYRONE CRAFT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 MA 0064

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2014 CR 00046

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed in part, Sentence Reversed and Remanded.

---

*Atty. Lynn Maro,* Mahoning County Prosecutor, *Atty. Kristie M. Weibling,* Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Andrew S. Pollis*, Liberty York, Legal Intern, Milton and Charlotte Kramer Law Clinic, Case Western Reserve University School of Law, for Defendant-Appellant.

Dated: April 2, 2026

**Robb, J.**

**{¶1}** Defendant-Appellant Ervin Tyrone Craft appeals the judgment of the Mahoning County Common Pleas Court entered after he pled no contest in a drug case. Three of his assignments of error present speedy trial arguments. Initially, he seeks dismissal of the criminal action based on his computation of days passing prior to the execution of his speedy trial time waiver or based on the allegation that an unreasonable amount of time passed after a purported revocation of the time waiver. He alternatively seeks remand for an evidentiary hearing on his challenge to the time waiver's validity at the time of execution.

**{¶2}** Appellant also challenges the denial of his motion to suppress the substances and cash recovered after a drug dog provided probable cause to search his vehicle during a stop initiated upon reasonable suspicion of a traffic violation. Specifically, he argues the dog prolonged the investigatory detention beyond the time needed for the traffic stop and he argues the officer lacked additional reasonable suspicion to detain him longer for the dog sniff. The speedy trial and suppression arguments are without merit.

**{¶3}** Alternatively, Appellant claims the trial court completely failed to advise him of the effect of a no contest plea and thus he need not show prejudice to seek vacation of the plea on appeal. The state concedes the error on the no contest plea only and then attempts to convince us the other assignments of error are moot. However, as Appellant's reply points out, the decisions addressed in the other assignments were final and appealable, would still exist on any remand, and warrant a decision at this time. In any event, there was not a complete failure to ensure Appellant understood the effect of the no contest plea, and thus, a demonstration of prejudice is required. The plea is upheld because there was no prejudice to Appellant.

**{¶4}** Lastly, we sua sponte recognize the plain error of imposing a sentence on both offenses even though they were merged, which resulted in Appellant having an extra conviction on his record.

**{¶5}** For the following reasons, we uphold the decisions denying the speedy trial arguments, overruling the suppression motion, and entering a finding of guilt on the no

contest plea.  Accordingly, the trial court's judgment is affirmed in part.  However, the judgment of sentence is reversed, and the case is remanded for a limited resentencing hearing where the state shall elect an offense for sentencing and the trial court shall impose sentence on only that offense.

STATEMENT OF THE CASE

{¶6}    On January 4, 2014, Appellant was pulled over when he failed to signal a turn until he was already in the intersection.  After a drug dog alert, drugs were discovered in the vehicle, and he was arrested.  On January 16, 2014, Appellant was indicted for trafficking in cocaine and possession of cocaine.  Both offenses were felonies of the first degree as the amount was over 100 grams.  R.C. 2925.03(A)(2),(C)(f)(g); R.C. 2925.11(A), (C)(4)(f).  Each offense was accompanied by a major drug offender specification and a forfeiture specification (seeking the seized 2001 GMC Yukon and $8,136 in cash).

{¶7}    At arraignment, the trial date was set for March 10, 2014.  (1/28/14 J.E.) The date was continued after Appellant's retained attorney filed a motion to suppress, seeking to exclude the evidence seized from his vehicle.  In pertinent part, the motion argued he was detained for an unreasonable time for the arrival of the K9 unit and additional reasonable suspicion for the prolonged stop did not arise.  (2/27/14 Mot.)

{¶8}    Appellant obtained a bond reduction and posted bond on March 13, 2014. As one of the conditions on bond, he agreed to appear before the court for all future court proceedings to answer for the charges.  (3/12/14 J.E.) ($35,000, 10% allowed); (3/14/14 Bond).

{¶9}    After various continuances, the court held the suppression hearing on September 24, 2014 and took the matter under advisement.  On January 21, 2015, the court overruled the suppression motion and set the final pretrial for February 18, 2015.

{¶10}  On February 20, 2015, a speedy trial waiver was filed.  The time waiver was executed on February 18, 2015 by the prosecutor, defense counsel, Appellant, and the court.

{¶11}  Appellant failed to appear for the April 8, 2015 trial, and a bench warrant was issued.  (4/9/15 J.E. 1).  Defense counsel filed a motion to withdraw saying Appellant

was terminating his services and hiring substitute counsel. The court granted the motion to withdraw. (4/9/15 J.E. 2).

{¶12} More than eight years later, Appellant was arrested in South Carolina and then apprehended on the bench warrant on August 12, 2023. Appellant retained a new attorney. (8/21/23 J.E.); (8/29/24 J.E.). After discovery and continued pretrials, a jury trial was set for May 13, 2024. (12/14/23 J.E.). The suppression hearing transcript was filed for counsel's perusal. (1/24/24 Docket Entry).

{¶13} On April 23, 2024, Appellant filed a motion to dismiss arguing more than 270 days passed from indictment to the February 20, 2015 speedy trial waiver. He claimed the time waiver should be considered as operating prospectively rather than as curing past violations. The state filed an opposition and alternatively concluded only 156 days were attributable to speedy trial time from the January 5, 2014 booking date to the date of the time waiver due to tolling events, including discovery and the suppression motion. The trial court denied the motion to dismiss. (4/30/24 J.E.).

{¶14} Thereafter, the court granted defense counsel's oral motion to withdraw and appointed new counsel. (5/3/24 J.E.). After making standard discovery motions, new counsel requested various items. A motion hearing was set for November 25, 2024, along with a final pretrial date and a February 10, 2025 trial date. The court set a further motion deadline for October 15, 2024. (10/2/24 J.E.). Nevertheless, Appellant then filed seven motions a month late (seeking leave instanter). (11/14/24 Motions).

{¶15} One motion sought independent testing of the substances. Another motion requested dismissal for due process violations, raising bond and speedy trial issues. The motion reviewed the procedural history of the case, noting he was arrested at the scene on January 4, 2014. He criticized as unreasonable the time it took to rule on his suppression motion (prior to the time waiver), urging the time during which the motion was pending should not be attributable to him. As alleged in his prior motion to dismiss on speedy trial grounds, he again argued the time expired prior to the waiver, which he insisted should be viewed as prospective.

{¶16} The defense also filed a "Motion to Challenge" the February 20, 2015 speedy trial time waiver. The motion said Appellant: denied the signature on the line for

Case No. 25 MA 0064

the defendant was his signature; had no memory of signing the waiver; and did not knowingly, intelligently, and voluntarily waive his right to a speedy trial. On these grounds, he concluded the waiver was invalid and asked the court to set it aside (so the clock would continue ticking despite the waiver).

{¶17} With a shortened response time before the motion hearing due to the late filing of the defense motions, the state filed responses on the day of the hearing. The state pointed out the existence of the time waiver and the calculation of time before the waiver were matters already addressed by the court upon the motion filed by Appellant's last attorney.

{¶18} At the motion hearing, the court opined the delay in the suppression proceedings was mostly attributable to the defense. (11/25/24 Tr. at 27-28). When it was noted a request for independent testing of the drugs at this late date appeared inconsistent with an attempt to revoke the time waiver, the defense expressed a desire to proceed on the testing motion, rather than seek to revoke the waiver. *Id.* at 13-14, 19.

{¶19} On the challenge to the time waiver's initial validity, the judge explained there was no transcript related to the waiver because recorded hearings are not conducted for signed and filed speedy trial waivers; emphasis was also placed on the four signatures on the waiver. *Id.* at 3, 11, 18-19, 23. After the motion hearing, the court issued an entry granting independent testing and disposing of the other motions (labeling some moot). (12/3/24 J.E.).

{¶20} On the day of the final pretrial (five days before trial), defense counsel moved to withdraw explaining Appellant filed a grievance against him. (2/5/25 Mot.). The court granted the request, continued the trial, and appointed new counsel (the third attorney since Appellant was re-arrested after absconding). (2/5/25 J.E.). The jury trial was reset for May 19, 2025. (2/11/25 J.E.).

{¶21} On March 21, 2025, Appellant's new counsel filed a motion to renew or reconsider certain November 14, 2024 motions. He listed the motion to dismiss on speedy trial grounds, the motion to challenge the time waiver, and the motion to revoke the time waiver (although a separate motion to revoke had never been filed). The reconsideration motion explained the defense no longer wanted independent testing.

Case No. 25 MA 0064

{¶22} The court overruled the motion to renew or reconsider. (3/27/25 J.E.). Then, an additional suppression motion was filed, heard, and overruled. (4/3/25 Mot.); (5/7/25 Tr.); (5/14/25 J.E.).

{¶23} On the day of the final pretrial, the parties entered a plea agreement. Appellant agreed to plead no contest to both counts as charged. The state agreed to recommend five years in prison, pointing out the offenses would merge. (5/14/25 Tr. 4). The state also agreed to dismiss the major drug offender specification while Appellant agreed his no contest plea included the attached forfeiture specification but only with regard to the cash. *Id.* at 2-5. The vehicle would be returned to Appellant upon proof of ownership. (5/15/25 J.E.).

{¶24} As requested by the defense, the court ordered a presentence investigation. Before sentencing, Appellant filed a second motion to renew or reconsider the prior speedy trial motions while seeking to correct clerical errors on dates in those motions. The court overruled the motion and proceeded to sentencing. (6/24/25 J.E. 1).

{¶25} At sentencing, the court imposed five years in prison without saying what offense received the sentence (and with the state failing to elect an offense). In the sentencing entry, the court imposed five years in prison on each offense even while saying they were merged. (6/24/25 J.E. 2). Appellant filed a timely notice of appeal.

{¶26} Appellant sets forth five assignments of error. Three assignments of error (one, two, and five) are related to speedy trial rights; for ease of analysis, we move the fifth assignment of error to follow the first two assignments of error. Before proceeding to these assignments, we discuss the state's mootness claim.

## MOOTNESS

{¶27} Instead of filing an appellee's brief, the state filed a partial confession of error. The state concedes error only with regard to assignment of error of four, wherein Appellant challenges the validity of the no contest plea. In the partial confession of error, the state attempts to convince this court Appellant's other four assignments of error are moot. However, the arguments in the state's partial confession of error are unconvincing on various levels.

**{¶28}** As Appellant's reply brief urges, there was a final order of sentence after a no contest plea, which afforded him the right to appeal the suppression and speedy trial issues, some of which would call for dismissal of the case with prejudice if successful. The state cites irrelevant law, which says a final judgment must contain the means of conviction, the sentence, and the judge's signature (followed by the clerk entering the judgment on the journal). *See State v. Baker*, 2008-Ohio-3330, ¶ 1, 14, 19 (one document to satisfy the final judgment of conviction), citing Former Crim.R. 32(C) (amended 7/1/25). Here, the final judgment of conviction and sentence satisfied the rule. (6/24/25 J.E.).

**{¶29}** "On an undismissed appeal from a trial court, a court of appeals shall . . . [u]nless an assignment of error is made moot by a ruling on another assignment of error, decide each assignment of error and give reasons in writing for its decision." App.R. 12(A)(1)(c) (after stating the court shall review the judgment appealed and determine the appeal on the merits set forth in the briefs, any oral argument, and the record). Applying this rule, the Supreme Court of Ohio has explained an assignment of error may be labeled moot only if it cannot have any real legal effect on a controversy that exists at the time. *State v. Gideon*, 2020-Ohio-6961, ¶ 26. Accordingly, an assignment of error raising a challenge that "is potentially dispositive of a defendant's conviction . . . may not be rendered moot by a remand on any other assignment of error." *Id.* (where the Supreme Court reversed an appellate decision suppressing evidence and held the appellate court also erred in saying its remand order requiring the granting of suppression mooted the assignment of error on sufficiency of the evidence, which would require dismissal of the conviction with prejudice if meritorious).

**{¶30}** Clearly, assignments of error that would result in our dismissal with prejudice if sustained, such as the first two speedy trial issues, cannot be declared moot. If meritorious, they would be immediately dispositive of the conviction.

**{¶31}** Nor would a vacated no contest plea moot the other speedy trial assignment of error, which complains the trial court's denial of his motion deprived him of an evidentiary hearing on his challenge to a prior time waiver. A speedy trial argument is "potentially dispositive" even if a remand is sought for a factual hearing on a matter addressed in a speedy trial motion to dismiss with prejudice.

**{¶32}** As Appellant's reply further urges, the denial of suppression of the drugs constituting the offense need not be considered moot. Appellant points out the drugs were an element of the offenses, and if his suppression of evidence argument were to succeed on appeal, this would probably (eventually) result in dismissal of this particular case (by the state[1]). If a trial court denies a motion to suppress the drugs constituting an element of the charges after an evidentiary hearing, the defendant pleads no contest rather than guilty in order to preserve his right to appeal the suppression decision, the sentenced defendant appeals the suppression order that became final upon the sentencing judgment, and the defendant's brief on appeal also raises a non-constitutional issue regarding the no contest plea, *then* an appellate court that determines a new plea hearing is required should not remand for new advisements on the no contest plea without addressing the assignment of error on suppression. The suppression issue is ripe for review just as the speedy trial issues are ripe.

**{¶33}** In sum, the motions on which assignments of error one, two, three, and five are based were already finally decided by the trial court. And, they are not merely issues that may or may not arise again after a remand (versus where a court reverses for a new trial on a certain basis but refuses to address an objection that arose during the trial that may not arise again at the new trial). Labeling the fully briefed issues as moot (if the no contest plea were to be vacated) would merely delay the appellate court's decision on them until the next appeal after any remand for a new no contest plea advisement. The trial court's decision on these issues would not become "hypothetical, academic, or dead." *See generally State ex rel. Cincinnati Enquirer v. Hunter*, 2014-Ohio-5457, ¶ 4, quoting *Culver v. Warren*, 84 Ohio App. 373, 393 (7th Dist. 1948) (for ascertaining if an "action or opinion" is moot).

---

[1] Contrary to Appellant's contention, the granting of a motion to suppress evidence for a Fourth Amendment violation involves the remedy of suppression of the evidence, not a judgment of dismissal. *State v. Hocker*, 2003-Ohio-5146, ¶ 7 (7th Dist.). There is no Ohio criminal rule providing for a pretrial dismissal based on lack of probable cause or sufficiency of the evidence. The United States Supreme Court has observed: "Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether." *United States v. Blue*, 384 U.S. 251, 255 (1966). "In some cases, of course, prosecution may effectively be foreclosed by the absence of the challenged evidence. But this contemplated consequence is the product of the exclusion of specific evidence tainted by the Fourth Amendment violation and is not the result of a complete bar to prosecution." *United States v. Crews*, 445 U.S. 463, 474, fn. 20 (1980).

{¶34} Rather, the issues were pretrial issues that could engender a dismissal, and the no contest plea was entered to preserve them. The assignments of error arose on appeal due to an actual live controversy, and our court would be able to grant relief on them (if meritorious) regardless of whether the alternative assignment of error on the no contest plea had merit. *See generally Maurent v. Spatny*, 2025-Ohio-5002, ¶ 11 (where the Supreme Court observed a matter is not moot and the merits of the appeal warrant consideration where an actual controversy exists as it is possible for the reviewing court to grant relief). The state's mootness argument in the confession of error is without merit and is rejected.

{¶35} In any event, the contention in the state's confession of error about assignments of error one, two, three, and five being moot would only arise if the confessed no contest plea argument in assignment of error four actually had merit. However, the plea of no contest was valid despite the state's confession of error on that topic. The validity of the no contest plea will be addressed in the final section, but we make one final point here: a confession of error in a criminal appeal is not binding. *See State v. Harding*, 2014-Ohio-884, ¶ 12 (7th Dist.) (although a prosecutor's confession of error "should be encouraged when warranted," it does not result in a right of reversal). A reviewing court exercises sound policy when it "examine[s] independently the errors confessed," which protects the public interest in criminal proceedings and "promotes a well-ordered society" while recognizing "judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties." *Young v. United States*, 315 U.S. 257, 258-59 (1942).

{¶36} We also note the lack of an appellee's brief does not require the acceptance of the appealing party's contentions, such as on calculations, legal conclusions, or the contents of the docket, file, and transcripts. *See generally Dedie v. Fyda Truck & Equip.*, 1999 WL 1138570, *1 (7th Dist. Dec. 9, 1999) ("this court is authorized to accept appellant's statement of the facts as true where appellee has failed to file a brief and nothing in the record controverts appellant's statement of the facts"), citing App.R. 18(C) (where the appellee fails to file a brief, the court "may" accept the appellant's statement of facts and issues, but even this discretionary authority can only be exercised if the

appellant's brief "reasonably appears to sustain such action"). With these principles addressed, we proceed to the assignments of error.

SPEEDY TRIAL TIME PRIOR TO WAIVER

**{¶37}** Appellant's first assignment of error alleges:

"The trial court erred in denying Mr. Craft's motion to dismiss based on his statutory and constitutional speedy-trial rights."

**{¶38}** In the first of the three speedy trial assignments of error, Appellant claims that even assuming the validity of the speedy trial waiver (filed on February 20, 2015 but signed two days prior), his speedy trial time had already expired. Appellant's ability to present arguments on the pre-waiver time computation is dependent on his threshold claim that a speedy trial waiver is prospective only and does not retroactively waive expired time.

**{¶39}** However, the *Santini* case he cites is contrary to this position. In *Santini*, this court held, "when the right to a speedy trial has been formally asserted on the record pursuant to a motion to dismiss or a similar motion, a *subsequent waiver* of speedy trial will have prospective application only." (Emphasis added.) *State v. Santini*, 2001-Ohio-3313, * 402 (7th Dist.). Distinguishably, Appellant did not file a speedy trial motion prior to the time waiver. (After fleeing from justice weeks after the waiver and remaining absent for over 8 years, he filed his first speedy trial motion more than nine years after the waiver.)

**{¶40}** In fact, our *Santini* case specifically distinguished our prior case where the defense did not file a motion for speedy trial dismissal *prior* to the execution of the time waiver. *Id.* at 401, citing *State v. Smith*, 1999 WL 1279156 (7th Dist. Dec. 30, 1999). In those circumstances, we concluded, "appellant's execution of his speedy trial waiver after the time for trial had run, effectively bound him to the waiver." *Smith* at * 4, citing *State v. Dumas*, 68 Ohio App.3d 174, 176 (10th Dist. 1990) and *State v. O'Brien*, 34 Ohio St.3d 7 (1987), syllabus.

**{¶41}** In the latter case, the Ohio Supreme Court held: "Following an express, written waiver of unlimited duration by an accused of his right to a speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused

files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time." *O'Brien* at paragraph two of the syllabus.

**{¶42}** The Fifth District recently rejected an argument that a time waiver did not apply retroactively to waive a speedy trial violation occurring prior to its execution. *State v. Mack*, 2025-Ohio-4812, ¶ 15, 88, 97 (5th Dist.). Where the motion to dismiss on speedy trial grounds was filed long after the time waiver, the court explained, "because appellant's speedy trial waiver failed to specify a beginning date, we conclude that the waiver was deemed to be effective from the date of arrest." *Id.* at ¶ 94, citing *State v. Matland*, 2010-Ohio-6585, ¶ 47 (7th Dist.).

**{¶43}** Where no speedy trial motion was filed before the time waiver, our district specified: "When a waiver fails to include a specific date as the starting point for the tolling of time, the waiver is deemed to be effective from the date of arrest." *Matland* at ¶ 47 (even where the defendant entered a limited waiver with an end date), quoting *State v. Bray*, 2004-Ohio-1067, ¶ 8-9 (9th Dist.) (where the defendant moved to dismiss on speedy trial grounds months after a time waiver, the court held, "in failing to give a date certain for the beginning and ending points for tolling purposes, the waiver was effective from the date of [the defendant's] arrest and was unlimited in duration"); *see also State v. Brown*, 2023-Ohio-2909, ¶ 7 (9th Dist.) (maintaining their *Bray* holding). In accordance, because Appellant filed an unlimited time waiver without first raising a speedy trial issue, Appellant cannot later argue the speedy trial time expired prior to his time waiver.

**{¶44}** In any event, his allegations regarding the amount of tolled time or the reasonableness of delay in ruling on his suppression motion lack merit or are not dispositive of the time issue.

**{¶45}** The constitutional right to a speedy trial does not have set time parameters and state law may therefore prescribe a reasonable period of time consistent with the constitutional framework. *Barker v. Wingo*, 407 U.S. 514, 523 (1972). Although Ohio's speedy trial statutes within R.C. 2945.71 through R.C. 2945.73 are strictly construed against the state and we review legal decisions de novo, a trial court's factual decisions in denying a speedy trial motion are given deference if supported by competent, credible evidence. *State v. McDaniel*, 2023-Ohio-3593, ¶ 19 (7th Dist.).

Case No. 25 MA 0064

**{¶46}** "A person against whom a charge of felony is pending . . . shall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(C)(2). "The time for speedy trial begins to run when an accused is arrested; however, the actual day of the arrest is not counted." *State v. Tisdale*, 2009-Ohio-4278, ¶ 33 (7th Dist.),[2] citing *State v. Cross*, 2008-Ohio-3240, ¶ 17 (7th Dist.). The triple time provision states, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(E). However, the clock is tolled and speedy trial time is extended under the circumstances listed in divisions (A) through (J) of R.C. 2945.72.

**{¶47}** Appellant begins by applying triple time to the period from January 5, 2014 (the day after his arrest) until January 31, 2014 (when he filed discovery requests). He arrives at 78 days after applying triple time. He tolls the clock until February 11, 2014, the day the court ruled on his requests and the state filed discovery notices. *See State v. Brown*, 2002-Ohio-7040, ¶ 22, 26 (where the Supreme Court held the defendant's requests for a bill of particulars and discovery are tolling events). After that date, he adds 48 days (after applying triple time) for a total of 126 days until his February 27, 2014 suppression motion, which tolled the speedy trial time. *See* R.C. 2945.72(E) ("Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused"). As he was released on bail on March 13, 2014, any time accumulating thereafter was single time.

**{¶48}** The suppression hearing was continued twice with the agreement of the defense, causing months of tolling prior to the September 24, 2014 suppression hearing. *See* 2945.72(H). Between those continuances, the trial court sua sponte continued the suppression hearing from 6/23/24 to 7/28/24. (6/19/14 J.E.). Appellant attributes these days to the state, pointing to the unenlightening judgment entry. *See Cross*, 2008-Ohio-3240, at ¶ 53 (7th Dist.) ("a trial court that issues a sua sponte continuance, which takes a defendant's trial beyond the speedy trial limit, must inform the defendant of the reasons

---

[2] We also recognized a defendant's pre-indictment time waiver in municipal court may stop the clock on the offense for which he was charged and incarcerated prior to indictment. *Tisdale*, 2009-Ohio-4278, at ¶ 22 (7th Dist.). Appellant does not address the effect of a January 7, 2014 county court docket entry disclosing a time waiver on the trafficking charge (prior to a January 16, 2014 direct presentment indictment on this charge and the alternative charge of possession).

for the continuance by journal entry before the expiration of the speedy trial time"), citing *State v. Mincy*, 2 Ohio St.3d 6 (1982) ("the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limits"); *see also State v. McRae*, 55 Ohio St.2d 149, 153 (1978) (or the record must affirmatively demonstrate reasonableness).

{¶49} Although the court issued a timely judgment entry showing it was the court's own continuance, the court did not specify the reason the court decided to continue the suppression hearing in the entry or by some other affirmative demonstration such as comments at a recorded hearing. As a result, Appellant attributes 35 days (single time) to the state, for a total of 161 days on his clock by the time of the September 24, 2014 suppression hearing.

{¶50} Thereafter, the court did not issue the ruling denying the suppression motion until January 21, 2015. This entry also set a final pretrial for February 18, 2015, on which date a speedy trial waiver was executed and then filed on February 20, 2015. Appellant concludes 111 days between the suppression hearing and the suppression ruling constituted an unreasonable time to rule and should thus be attributed to the state, bringing his speedy trial calculation to just over 270 days.

{¶51} He points to precedent stating delay in ruling on suppression is subject to a reasonableness requirement in order to be "fully chargeable" to the defendant. *See Santini*, 2001-Ohio-3313, * 402 (7th Dist.) (asking whether the nature of the motion requires it to be decided before reasonably proceeding with trial plans and whether the time the motion was pending was of a reasonable duration). This was the distinguishable case reviewed above where a speedy trial motion was filed *prior to* the time waiver. *Id.* at 402 (declining to address the sufficiency of the entry on a sua sponte court continuance where time would not have expired, even assuming the defendant was correct to attribute the time to the state).

{¶52} In explaining the reasonableness standard, the *Santini* court pointed out a defense motion under R.C. 2945.72(E) only tolls the speedy trial time for the period of delay "necessitated" by the motion. *Id.* at 403-404. It was also observed, "A strict adherence to the spirit of the speedy trial statutes requires a trial judge, in the sound

exercise of his judicial discretion, to rule on these motions in as expeditious a manner as possible"). *Id.* at 404, quoting *State v. Martin*, 56 Ohio St.2d 289, 297 (1978) (a trial court does not have "unbridled discretion concerning the amount of time it takes to rule on a defense motion"). In *Santini*, we found 65 days from filing to ruling reasonable after considering factors including the nature of the motion (importance and complexity), the timing of the motion, the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 404-405, quoting *Barker,* 407 U.S. at 530 (setting forth the latter four factors in evaluating the constitutional reasonableness of pretrial delay).

{¶53} Appellant makes note of a Supreme Court guideline indicating a motion should be ruled upon within 120 days of filing (unless otherwise noted on the report form). Sup.R. 40(A)(3). From this, he asks us to consider the total time the motion was pending (February 27, 2014 to January 21, 2015) in weighing the reasonableness of the time taken to rule after the September 24, 2014 hearing. As he acknowledges, the Superintendence Rule is internal, aspirational, related to reporting, and not mandatory. Furthermore, a motion that cannot be ruled on without an evidentiary hearing cannot satisfy this guideline if the hearing has not taken place. The events occurring between the motion's filing and the hearing must be considered, including other tolling events such as defense continuances.

{¶54} At arraignment, the trial date was set for March 10, 2014. (1/28/14 J.E.). However, Appellant's February 27, 2014 suppression motion sought and necessitated the setting of a suppression hearing before the trial could take place. (3/24/14 J.E.); R.C. 2945.72(E) ("[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused"). Moreover, this suppression motion, filed days before the trial date, also necessitated the continuance of the trial. Notably, the suppression motion was filed over a week after the deadline set by court order. (2/11/14 J.E.) (after holding a pretrial, the court provided the defense seven days to file a suppression motion). It was reasonable to set the suppression hearing for April 22, 2014, considering the subjects and contents of the motion, which required the issuance of a subpoena to police officers and the collection of documents on K9 training.

{¶55} Thereafter, there was nothing unreasonable in rescheduling the hearing when the parties both agreed to continue the April 22, 2014 hearing date to June 23, 2014 and later agreed to continue the July 28, 2014 hearing date to September 24, 2014. (4/25/14 J.E.); (7/29/14 J.E.).  As Appellant acknowledges, the speedy trial time was tolled for those continuances of the suppression hearing (excluding the 35 days for the court's sua sponte continuance he attributed to the state).  Statutorily, when the defense joins the continuance request, the period is not restricted by reasonableness (as a pure state's request would be).  R.C. 2945.72(H) (speedy trial time is extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion"); *see also McRae*, 55 Ohio St.2d at 152 (indicating the time is tolled when the defense agrees to a continuance to a date that falls beyond the try-by date, as opposed to the reasonableness required for the continued date where the defense "merely fails to object to that date").  In any event, those agreed continuances were not unreasonable.

{¶56} In sum, regarding the period between the motion and the hearing, Appellant's suppression motion could not be ruled on until the suppression hearing was held, and Appellant caused or agreed with almost all of the time between the motion and the hearing (besides the 35 days he attributes to the state).  We also note the state issued subpoenas to three police officers for the first scheduled suppression hearing.  It is within the wide range of legal representation to employ a defense tactic of postponing suppression hearings pending negotiations in order to use suppression arguments as a bargaining chip when seeking a favorable plea agreement during the pretrial phases.  This is even more likely when a defendant is out on bond (and Appellant posted bond before the first scheduled suppression hearing).

{¶57} In discussing the 111 days he attributes to the state between the suppression hearing and the court's ruling, Appellant says the entry denying suppression was not a detailed undertaking since it simply overruled his motion with no findings of fact or conclusions of law.  However, this does not mean the trial court did not spend time researching the issue, weighing the facts, and contemplating its decision.

**{¶58}** A Fifth District case cited by Appellant, which found unreasonable delay in issuing a suppression decision, is factually distinct. In that case, the trial court already announced the denial of the motion at the suppression hearing but then took eight months to issue the memorialization of the denial. *State v. Fields*, 2006-Ohio-223, ¶ 5, 28 (5th Dist.) (and opining 120 days of the time would be considered reasonable).

**{¶59}** An Eleventh District case cited by Appellant does not offer support either. In answering the question of "whether a delay of almost four months may be made necessary by a motion to suppress," the appellate court concluded, "the trial court did not exceed its permitted time by ruling on the motion one hundred nine days after it was heard." *State v. Beam*, 77 Ohio App.3d 200, 207-209 (11th Dist. 1991) (in a misdemeanor case with a 90-day speedy trial time and 54 days expired before the disputed tolling), citing R.C. 2945.72(E) and M.C.Sup.R. 6 ("All motions shall be ruled upon within 120 days from the date the motion was filed, except as otherwise noted on the division report forms."). Even the court's alternative observation focused on the time to rule after the suppression hearing in finding an unreasonable time. *Id.* at 209 (subtracting the 36-day "surplus" calculated as remaining on the clock prior to the disputed tolling event from the 109 days to rule after the hearing and concluded the remaining difference of 73 days was not an unreasonable time to rule on the motion to suppress after the hearing).

**{¶60}** Accordingly, in addition to considering the motion to be submitted upon the *completion of the necessary hearing*, it was recognized that even if a period for ruling appears unreasonable, a court does not attribute the entire period to the state but only the amount that was not necessitated by the motion. Here, taking less than 120 days to rule on the motion after the hearing is not facially unreasonable.

**{¶61}** Even assuming arguendo a portion of this period after the hearing was unreasonable, not enough of this time would be considered unreasonable to result in a violation of speedy trial rights through time expiration or through a general unreasonableness evaluation (even when viewed in conjunction with the 35 days the court sua sponte continued the suppression hearing and even considering the 30 days, unaddressed by arguments within the assignment of error, between the ruling and the time waiver). Regardless, as set forth at the beginning of this assignment of error, an

unlimited time waiver is retroactive where a speedy trial motion was not filed before the waiver. *See, e.g., Matland*, 2010-Ohio-6585, at ¶ 47 (7th Dist.); *Smith*, 1999 WL 1279156, at * 4 (7th Dist.), citing *O'Brien*, 34 Ohio St.3d at syllabus and *Dumas*, 68 Ohio App.3d at 176. This assignment of error is overruled.

REVOCATION OF TIME WAIVER

**{¶62}** Appellant's second assignment of error contends:

"The trial court erred in denying Mr. Craft's motion challenging the validity of Mr. Craft's purported waiver of his speedy-trial rights."

**{¶63}** We begin by pointing out although this wording sounds like a challenge to the validity of the time waiver, the arguments under *this* assignment of error address revocation of the time waiver and the time passing thereafter. It is under the fifth assignment of error where Appellant contends the trial court erred in denying his motion challenging the validity of the time waiver (without an evidentiary hearing on his claim that it was not his signature on the time waiver or he did not knowingly execute it).

**{¶64}** The reason his second assignment of error points to the November 14, 2024 "motion challenging the validity of the . . . waiver" is likely because there was no docketed motion to revoke the waiver. Rather, it seems there is an assumption that his motion challenging the initial validity of the waiver was alternatively attempting to revoke the waiver for time going forward.

**{¶65}** On the topic of revocation, Appellant argues that even assuming he signed a valid time waiver in February of 2015, he had the absolute right to revoke it and claims he exercised this right through his November 14, 2024 motion. Utilizing this date, he then asserts the subsequent delay in bringing him to trial was unreasonable in violation of his constitutional speedy trial right and thus requiring dismissal of his criminal case with prejudice.

**{¶66}** A revocation of speedy trial time waiver is not to be implied, as can be seen in the following Ohio Supreme Court holding:

> We hold that, following an express written waiver of unlimited
> duration by an accused of his speedy trial rights, the accused is not entitled
> to a discharge for delay in bringing him to trial unless the accused files a

Case No. 25 MA 0064

formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time . . .

The trial court is charged with the duty of scheduling trials, and it would seem to be reasonable to require the defendant to formally inform the court of an objection to a further continuance, and a reassertion of the defendant's right to a speedy trial. Otherwise the trial court may reasonably rely upon the written waiver of speedy trial as filed within the case. Defendant here made no such objection or demand for trial, and his initial waiver thus remained effective.

*O'Brien*, 34 Ohio St.3d at 9-10.

{¶67} Accordingly, where there is a proper revocation of a time waiver, the statutory speedy trial time does not then reactivate; instead, the question for a speedy trial claim becomes whether the delay post-revocation was constitutionally unreasonable considering the length of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. *Id.* at 9-10 (opining 138 days would not have been considered a presumptively prejudicial delay and thus the factors need not be weighed), quoting *Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

{¶68} Before analyzing these factors, we must examine the purported revocation under the standard in *O'Brien*. As we observed, "the revocation must demand trial with no further continuances . . ." *State v. Boyd*, 2023-Ohio-271, ¶ 11 (7th Dist.) (the motion to dismiss on speedy trial grounds did not constitute a revocation of the time waiver and an acceptable revocation was not filed until later).

{¶69} The November 14, 2024 motion cited in the assignment of error is entitled, "Motion to Challenge Defendant's Previous Speedy Trial Waiver." As grounds for this challenge to the time waiver filed nearly ten years earlier (on February 20, 2015), Appellant claimed he had no memory of signing the waiver and the signature on it was not his. He noted there was no hearing conducted in open court at the time the waiver

was allegedly signed to prove the waiver was knowing and voluntary. Evincing this was his sole basis for the motion, the next sentence stated, "As such, the Defendant states that the alleged previous Waiver of Speedy Trial is invalid" (and asked for dismissal because the speedy trial time expired). In addition, the motion's conclusion said: "WHEREFORE, it is respectfully requested that this Court grant an Order setting aside the Defendant, Ervin Craft's previous waiver of his Right to Speedy Trial allegedly executed on February 20, 2015, finding the Waiver of Speedy Trial was not knowingly, intelligently and voluntarily signed by the Defendant, Ervin Craft." (11/14/24 Mot. to Challenge).

{¶70} This motion contained no reference to a revocation or withdrawal of the waiver. The reference to "setting aside" the waiver was specifically based on his claim that the waiver was invalid and was not based on a current demand for a speedy trial. Moreover, there was no objection to further delays or continuances, and there was no demand for trial. Nor did the motion even allude to a desire for the subsequent proceedings to proceed in a speedy fashion.[3] Rather, his focus was on finding a way to argue his speedy trial time expired because the waiver was invalid (in case the court rejected his argument in another motion filed that day stating his speedy trial time ran before the waiver, even assuming the waiver was valid). In fact, within yet another motion filed that same day, he asked for an independent analysis of the substances tested by the Bureau of Criminal Investigation more than ten years ago.

{¶71} Even if a proper revocation request was contained in the cited motion challenging the speedy trial waiver, it must be emphasized that counsel withdrew any request for revocation at the hearing on the various motions. (11/25/24 Tr. 14-15). The state strongly objected to retesting the substances this long after the seizure, citing an undue burden on the state and expressing concern the potency of the drugs may have weakened over the years. The court pointed out the granting of this defense request would require a continuance. Defense counsel acknowledged he still needed to file a

---

[3] Although the state's response to the motion to challenge the waiver included a response to a motion to revoke, no "motion to revoke" was filed in the case during that time period. *See* Docket. We note defense counsel served some motions on the state two weeks prior to actually filing them (including the motion for independent testing). It may be that the state received a motion that was never actually filed by the defense due to the realization the testing motion created the need for a defense continuance.

motion for expert fees and find a lab with an expert who would issue a report.  *Id.* at 13-14.

{¶72} While discussing this topic, the court opined a defendant is entitled to revoke a speedy trial waiver but a request at this point would "fly[] in the face" of the motion for independent testing.  *Id.* at 13.  The court made reference to more than one motion that had not yet been filed and instructed counsel to discuss the conflicting situation with Appellant.  *Id.* at 14.  After discussing the situation with Appellant, defense counsel told the court he would "withdraw his motion to revoke a speedy trial at this time" and proceed with the independent testing, which the court granted.  *Id.* at 14-15.

{¶73} As the trial court rationally opined, the defense testing motion required a continuance.  A request requiring a continuance would essentially be the opposite of "a formal written objection to any further continuances and . . .  demand for trial" (which *O'Brien* at 9 required for a revocation of a time waiver).  This is especially so where the simultaneous motion to challenge the speedy trial waiver did not use words indicating revocation was being demanded.

{¶74} Furthermore, when counsel then proceeded to address the motion to challenge the speedy trial waiver, he recited what he said was the motion's "threefold" argument:  the defendant does not recall signing the waiver; there was no hearing; and the speedy trial time expired.  *Id.* at 17.  The defense therefore treated the motion to challenge the waiver as distinct from any potential revocation motion discussed at the hearing.

{¶75} Regardless, there is another problem with Appellant's position that exists even if we were to accept Appellant's position that the motion impliedly contained a revocation (which he was improperly forced to withdraw because he can simultaneously demand trial and seek a continuance for expert analysis, despite law to the contrary).  *See O'Brien*, 34 Ohio St.3d at paragraph two of the syllabus (for purposes of invoking the reasonable time analysis after a revocation of a time waiver, a revocation exists if the defendant "files a formal written objection to any further continuances and makes a demand for trial").

**{¶76}** That is, the time between the November 14, 2024 motion and the May 14, 2025 no contest plea was only six months. Where there is a proper revocation of a time waiver, the speedy trial analysis asks only whether the post-revocation delay was constitutionally unreasonable. *Id.* at 9-10. As mentioned, factors to consider on the reasonableness of delay in a speedy trial claim include the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant; *however, the length of the delay must surpass a threshold before the weighing is triggered*. *Id.* at 10, citing *Barker*, 407 U.S. at 530.

**{¶77}** "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id. (*opining 4.5 months would not be a presumptively prejudicial delay and thus the factors would not be weighed), quoting *Barker* at 530 (and "the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case"). "A delay becomes presumptively prejudicial as it approaches one year in length." *State v. Adams*, 2015-Ohio-3954, ¶ 90, 95 (where the Supreme Court found a period of five to six months was not presumptively prejudicial and thus did not invoke the constitutional reasonableness test).

**{¶78}** Here, the period of six months passing after the alleged revocation was not "presumptively prejudicial." Thus, the delay is considered constitutionally reasonable, and the other factors in the *Barker* reasonableness test need not be reached. *Id.*; *O'Brien* at 10, quoting *Barker* at 530.

**{¶79}** In any event, the delay between his November 14, 2024 motion and the May 14, 2025 no contest plea was reasonable even if all factors are applied and weighed. On the very day Appellant filed the November 14, 2024 motion that he now claims was a valid revocation, he filed six other motions and requested a hearing. The motions were filed a month after the expiration of the defense motion deadline (set by the court's October 2, 2024 judgment entry, which also set a February 10, 2025 trial date).

**{¶80}** The hearing on his seven motions proceeded a mere eleven days after he filed them, and the court issued a judgment on the motions a week later. A motion granted by the court required a delay of the February 10, 2025 trial date. Namely, his motion for

independent testing precluded the case from proceeding to trial until he found an expert, obtained fees for the testing, and provided additional discovery disclosures related to the test results. Appellant did not formally withdraw the testing motion until March 21, 2025, when he filed a motion to renew or reconsider the specified November 14, 2024 motions.[4]

{¶81} The court promptly overruled the renewed motions in less than a week. (3/27/25 J.E.). In the meantime, Appellant caused the withdrawal of his attorney on February 5, 2025 (which had been set as the final pretrial date). This withdrawal and the appointment of a new attorney (his third since he was returned from his abscorsion) further ensured trial could not proceed as scheduled. The February 10, 2025 trial date instead proceeded as a pretrial with new counsel, which then resulted in the scheduling of a pretrial on March 20, 2025, a final pretrial on May 14, 2025, and a jury trial on May 19, 2025. (2/11/25 J.E.).

{¶82} Moreover, Appellant filed another motion to suppress on April 3, 2025 followed by an April 28, 2025 motion to continue the suppression hearing, causing a one-week delay in the hearing. The court denied the suppression motion within the week, and Appellant pled no contest that same day, May 14, 2025. All of the post-revocation delay was caused by Appellant.

{¶83} To conclude, the length of the delay and the reasons for the delay weigh heavily against a speedy trial violation. As for his assertion of his speedy trial rights, his dismissal motions discussed prior violations, and no motion claimed a speedy trial violation was caused by the delay after the purported revocation. Although Appellant was incarcerated due to bond violations and absconding for eight years, there is no indication his defense was impaired during the six-month period between the alleged revocation and the plea (considering the history of this first-degree felony case); the prejudice factor does not weigh in his favor. In any case, the factors clearly weigh in favor of a conclusion

---

[4] After this attorney withdrew and a new attorney was appointed, the defense filed a motion to renew or reconsider the motions to revoke the time waiver, to challenge the time waiver, and to dismiss the case for speedy trial violations; this motion merely cited to the prior filed motions without refiling them or adding motions or language (or an analysis on new time periods passing since the revocation now being alleged as occurring via a November 14, 2024 motion). (3/21/25 Mot.) (explaining the defense no longer wanted independent testing).

that only a reasonable time passed between the alleged revocation on November 14, 2024 and the May 14, 2025 no contest plea. This assignment of error is overruled.

HEARING ON VALIDITY OF TIME WAIVER

**{¶84}** Appellant's fifth assignment of error, which we advanced to sequentially follow his other speedy trial assignments, contends:

"The trial court erred in denying Mr. Craft's motion to challenge the purported speedy-trial waiver without first holding an evidentiary hearing."

**{¶85}** Relying on the issues actually specified in the November 14, 2024 motion challenging the February 20, 2015 time waiver, Appellant says he raised a factual issue about whether he signed and understood the time waiver. He points out there was no recorded hearing at the time of the 2015 waiver. From this, he concludes the court erred in denying his November 14, 2024 motion (renewed on March 21, 2025) before ensuring an evidentiary hearing was conducted on the factual issue of his consent to the waiver.

**{¶86}** Firstly, the trial court held a hearing on Appellant's first motion challenging the waiver. (11/25/24 Tr.). At that hearing, defense counsel informed the court he attempted to investigate Appellant's claim but was unsuccessful in securing a transcript of the February 18, 2015 pretrial held the day the waiver was executed. The court informed the defense no transcript existed because, "I don't hold hearings on the . . . waiver of speedy trial and so there's no hearing." *Id.* at 3, 17. Defense counsel told the court Appellant "indicated to me he wanted copies every time he came over here and it was listed on the court docket that there was a pretrial." *Id.* at 22-23. Counsel added, "I explained to him I couldn't tell from previous counsel whether or not the Court went into the courtroom as we're doing today and actually had a court reporter take down - -" The court interjected to reiterate if there was no hearing, then there is no transcript. *Id.* at 23.

**{¶87}** Defense counsel asked whether the court wanted to swear in Appellant to testify to the facts relevant to his motions or whether the court wished counsel to advise the court what Appellant was telling counsel. The court chose the latter option, and defense counsel replied, "Okay. Very good. I can do it." *Id.* at 4. This colloquy does not equate to a denied request by the defense to present Appellant's testimony before a ruling on his motion. Instead, it shows acquiescence to the court using Appellant's claims to

counsel as the basis for adjudicating any factual issues arising from his motions if they needed to be addressed upon applying the relevant law.  We also note the defense did not seek to question the particular assistant prosecutor who signed the time waiver with Appellant or attempt to subpoena his original defense counsel, who also signed the waiver (nearly ten years prior).  Lastly, a defendant is not entitled to a second hearing on a motion to renew or reconsider (which merely lists some prior motions) just because the caption contains a hearing request.

**{¶88}**  Appellant's argument that he was denied a proper hearing on his challenge to the waiver is without merit.  In any event, the law addressing the validity of a time waiver does not support his legal position.

**{¶89}**  It is recognized a defendant "may waive his constitutional right to a speedy trial provided that such a waiver is knowingly and voluntarily made."  *State v. King*, 70 Ohio St.3d 158, 160 (1994), citing *Barker*, 407 U.S. at 529.  In the same case, the Ohio Supreme Court nevertheless pointed out "for purposes of trial preparation, a defendant's statutory right to a speedy trial may be waived, *with or without the defendant's consent*, by the defendant's counsel."  (Emphasis added.)  *Id.*, citing *State v. McBreen*, 54 Ohio St.2d 315 (1978), syllabus.

**{¶90}**  In the cited *McBreen* case, before ruling a defendant is bound by defense counsel's time waiver regardless of whether it was executed without the defendant's consent, the Court favorably cited a case binding the defendant even where he specifically objected to his counsel's waiver of time.  *McBreen* at 319.  Later, the Ohio Supreme Court confirmed defense counsel's time waiver was not invalidated by a defendant's objection to the waiver of his speedy trial rights.  *State v. Taylor,* 2002-Ohio-7017, ¶ 33, 36 (while also unsuccessfully demanding counsel be discharged).

**{¶91}**  In *King*, the Supreme Court found an unjournalized alleged oral waiver by defense counsel ineffective because "neither [the defendant] nor her trial counsel made an express written waiver or waived her rights to speedy trial in open court on the record." *Id.* at 160 (where defense counsel disputed the court secretary's note claiming the defense agreed to waive speedy trial time after she told counsel the judge's policy was to require a time waiver for such a continuance).  In doing so, the Court pronounced, the

speedy trial waiver "must be either written or made on the record in open court." *Id.* at 160. That is to say, the waiver need not be both written and on the record in open court.

**{¶92}** Likewise, the Supreme Court observed, "Pretrial conferences need not be recorded if the defendant is represented by counsel." *State v. Hale*, 2008-Ohio-3426, ¶ 105, fn. 4, citing Crim.R. 17.1. The requirements for waiving speedy trial time are not akin to the requirements for waiving counsel. *See* Crim.R. 44(C) ("Waiver of counsel shall be in open court and the advice and waiver shall be recorded . . . In addition, in serious offense cases the waiver shall be in writing."). Rather, the "trial court may reasonably rely upon the written waiver of speedy trial as filed within the case." *King* at 161, quoting *O'Brien*, 34 Ohio St.3d at 10.

**{¶93}** Where a time waiver contained the defendant's signature but the defendant "attempted to rescind his waiver of speedy trial arguing that he had not signed the waiver," we held: "The trial court's judgment entries memorialized Wright's waiver. As the waiver was valid, it was in full force and effect during the pendency of these proceedings." *State v. Wright*, 2017-Ohio-1211, ¶ 33-34 (7th Dist.). In addition, where counsel waived the client's speedy trial time to prepare for trial, we held it was irrelevant whether the defendant agreed to or even knew about the time waiver. *State v. Stanley*, 2004-Ohio-6801, ¶ 30 (7th Dist.).

**{¶94}** Here, the time waiver was not only signed by Appellant; it was signed by an assistant prosecuting attorney and by defense counsel with an execution date of February 18, 2015. (2/20/15 J.E.). Notably, this waiver was verified and contained in a journalized judgment entry. *Id.* The court signed and filed the waiver after finding the defendant was advised of his rights to a speedy trial granted by statute, the Ohio constitution, and the United States Constitution and finding he knowingly, intelligently, and voluntarily waived his rights. We additionally point out the day the waiver was signed was also the date of the *final* pretrial. (1/21/15 J.E.) (setting the final pretrial date). The waiver ensured the parties could engage in further plea negotiations and allow additional time for trial preparation if the negotiations failed.

**{¶95}** Appellant then absconded from justice and remained absent for over eight years. Eight months after he was captured, his first post-capture attorney filed a speedy

trial motion, acknowledging the February 20, 2015 time waiver.  (4/23/24 Mot.) (claiming the speedy trial time expired before the waiver, as addressed in assignment of error one). Appellant did not challenge his waiver at that time.  He thereafter obtained substitute counsel, and six months later, filed the motion at issue challenging the waiver.  (11/14/24 Mot.).  These facts, along with the total time passing before challenging the waiver, are valid considerations for a trial court assessing the credibility of a challenge to a waiver.

**{¶96}**  Claiming one does not remember a brief discussion or signature from nearly ten years before is not a convincing argument, especially as the case was not pending for most of that time due to Appellant's flight from justice.  We also note the signature on the time waiver's line for the defendant's signature is not dissimilar to Appellant's signature placed three weeks later on the conditions of bond judgment entry and on his recognizance witnessed by a deputy clerk. (3/12/14 J.E.) (acknowledging bond conditions before a judge); (3/14/24 (recognizing the cash bond as security for his appearance).

**{¶97}**  Finally, the trial judge presiding in the case at the time of the 2024 challenge to the waiver was *the same judge* who presided in the case at the time of the 2015 time waiver, at which time this judge executed and journalized the time waiver as a judgment upon declaring Appellant was advised of his speedy trial rights and he was knowingly, intelligently, and voluntarily waiving them.  In summary, Appellant's challenge to the time waiver lacked credibility, was without legal merit in any event, and was properly denied after a hearing.  This assignment of error is without merit.

SUPPRESSION MOTION

**{¶98}**  Appellant's third assignment of error alleges:

"The trial court erred in denying Mr. Craft's motion to suppress."

**{¶99}**  We review the trial court's decision on a motion to suppress under a mixed standard of review.  *State v. Turner*, 2020-Ohio-6773, ¶ 14. Factual decisions are upheld if they are supported by competent, credible evidence.  *Id.*  The factual findings are so accepted because the trial court occupies the best position from which to evaluate evidence and weigh the credibility of witnesses.  *State v. Mayl*, 2005-Ohio-4629, ¶ 41. Legal questions are reviewed de novo.  *Turner* at ¶ 14. We thus make an independent determination as to whether the facts satisfy the relevant legal standard. *Mayl* at ¶ 41.

**{¶100}** In general, a police officer may conduct an investigatory stop and detention without probable cause when the officer has reasonable suspicion of a criminal (including traffic) violation. *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968); *State v. Mays*, 2008-Ohio-4539, ¶ 8, 13; *see also State v. Tidwell*, 2021-Ohio-2072, ¶ 19-21. An officer's subjective motivation is irrelevant. *See Dayton v. Erickson*, 76 Ohio St.3d 3, 6 (1996); *Whren v. United States*, 517 U.S. 806 (1996).

**{¶101}** In general, the deployment of a trained drug dog during a lawful traffic stop does not trigger Fourth Amendment protection, and the dog may sniff the exterior of the vehicle even without reasonable suspicion of drug activity. *Illinois v. Caballes*, 543 U.S. 405, 408-410 (2005). However, this type of detention "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of the original stop. *Id.* at 407. In accordance, the traffic stop may not be "measurably" extended for the dog's arrival unless there exists additional reasonable suspicion calling for investigation. *Rodriguez v. United States*, 575 U.S. 348, 354-355 (2015), quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.").

**{¶102}** In other words, a drug dog can be employed during any traffic stop if it does not cause the duration of the stop to exceed the time reasonably needed to handle the matter for which the stop was made; beyond that time, reasonable suspicion of other criminal activity allows the officer to prolong the traffic stop in order to conduct an investigation, including to summon a K-9 unit. *Id.* at 350-351, 354-355*; see also State v. Batchili*, 2007-Ohio-2204, ¶ 12-19.

**{¶103}** In the latter case, the Ohio Supreme Court observed, "There is no showing that the detention was delayed so that the dog could conduct its search, and therefore, there was no constitutional violation." *Batchili* at ¶ 14 (where the dog alerted nine minutes into the stop while the background check was in progress). Alternatively, the Court viewed the totality of the circumstances and concluded reasonable suspicion allowed a prolonged traffic stop for a drug dog where the driver did not immediately pull over, had

a nervous demeanor, and made multiple statements on vehicle ownership while the vehicle had tinted windows, a cargo compartment in disarray with blankets over boxes, and smelled of air freshener. *Id.* at ¶ 17-19; *see also State v. Vega*, 2018-Ohio-4002, ¶ 17 ("When an officer has reasonable suspicion of criminal activity, however, nothing in *Rodriguez* limits his ability to prolong the stop for a reasonable time in order to conduct an investigation.").

**{¶104}** Nonetheless, a court need not reach the question of reasonable suspicion for further investigatory detention until answering the initial question of whether the use of the dog prolonged the stop beyond the time reasonably required to complete the "mission" of the stop, which includes not just writing the citation but determining whether to issue a ticket or a warning along with making ordinary inquiries to the traffic stop. *Rodriguez* at 354-355. Ordinary inquiries include checking the driver's license, checking for outstanding warrants, asking for proof of insurance, inspecting the vehicle's registration, and making some brief unrelated inquires. *Id.* at 355 (and the officer can order the driver to exit even for a simple traffic stop).

**{¶105}** Where a drug dog is properly deployed, the dog's alert may give rise to probable cause of criminal activity. When a trained narcotics dog gives an alert that drugs are present in the vehicle, an officer has probable cause to search the vehicle if the totality of the circumstances would lead a reasonably prudent person to believe a search would reveal contraband. *Florida v. Harris*, 568 U.S. 237, 248 (2013).

**{¶106}** "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." *State v. Moore*, 90 Ohio St.3d 47, 51 (2000), citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (the automobile exception does not have a separate exigency requirement).

**{¶107}** Upon this law, we address Appellant's argument about the court's January 21, 2015 denial of his motion to suppress the evidence recovered from his vehicle (the substances and the money). Appellant claims by the time the K9 unit arrived, the stop was prolonged beyond the time required to issue a traffic citation. Upon this conclusion,

he then claims the state failed to show reasonable suspicion for a new offense for prolonging the stop for purposes of summoning a K9 to the scene.

{¶108} However, a trial court could reasonably conclude and would not legally err by concluding the stop of Appellant was not prolonged beyond the time reasonably required for the "mission" of issuing the traffic citation. Appellant did not signal a left turn until he was already in the intersection, thus failing to signal a turn 100 feet before entering the intersection. (9/24/14 Tr. 13). After initiating a traffic stop, the two Beaver Township police officers in the patrol car were precluded from proceeding with their mission due to Appellant's conduct.

{¶109} Despite being pulled over by a patrol car, Appellant pulled his vehicle up to a gas pump, immediately alighted from the vehicle, and disobeyed verbal commands to get back in the vehicle and stay there. The driver of the patrol car (the lead officer) was forced to quickly terminate his transmission to dispatch about the traffic stop in order to control the situation. Not only did Appellant refuse to return to the vehicle, he started walking to the convenience store, ignoring the orders of the lead officer and the other officer from the same patrol car. While doing so, Appellant yelled racial accusations, asking why he was stopped and declaring the officers pulled him over because he was black. *Id.* at 17.

{¶110} The lead officer told Appellant he would explain the stop after Appellant discontinued walking away and returned to the vehicle. *Id.* at 18. Considering the presence of employees and a multitude of customers, the officers hoped for a peaceful de-escalation (as they carried spray instead of Tasers then). *Id.* at 18-19, 38. While continuing to refuse to comply with the officers' orders, Appellant reached the sidewalk in front of the store and approached the automatic doors. At that point, the officers attempted to physically prevent him from entering the store; each officer grasped an arm (in the escort position with one hand on the bicep and the other hand on the elbow). *Id.* at 17, 19. However, Appellant, who was 6'4" and weighed over 300 pounds, "threw [the officers] off and walked into the store" while they continued giving commands. *Id.* at 19.

{¶111} Appellant was described as aggressive, loud, and acting as though he was trying to make a scene and trying to draw the officers away from the vehicle. *Id.* at 18,

36, 49.  The lead officer testified he was worried Appellant was hoping someone listening to his tirade would be signaled to approach the vehicle during the disturbance he was creating.  *Id.* at 18.  Also, the officer noted he had not yet been able to ascertain whether a passenger was in the vehicle at the time.  *Id.* at 20.  A photograph shows a very dark tint on the windows of Appellant's vehicle.  (St.Ex. 1).  When asked if Appellant made any furtive movements, the officer replied, "He made all kinds of movements."  He clarified Appellant did not appear to make a movement as if going for a weapon but also indicated Appellant's long coat would have obstructed their view of any weapon.  *Id.* at 37.

{¶112}  Once they were forced to follow Appellant into the store, the lead officer talked Appellant into sitting at a dining table, and Appellant "kind of" calmed down.  *Id.* at 19-20.  Appellant was then advised of the traffic violation and asked for his identification.  Appellant said it was in his vehicle and he was in a hurry.  *Id.*  The officers' portable radios were not communicating properly from inside the store; e.g., the Boardman police never heard his call for backup.  *Id.* at 39.  The lead officer testified they walked outside once he believed he no longer had to worry about "physically fighting with" Appellant.  *Id.* at 20.

{¶113}  Upon reaching the vehicle, the lead officer stood close to Appellant to ensure he did not flee or grab a weapon while retrieving his wallet with his driver's license from inside the vehicle (while the other officer covered the position at the rear of the vehicle).  *Id.* at 20, 22.  At that time, the lead officer peeked in the vehicle to see if there was a passenger and noticed boxes and suit jackets.  *Id.* at 20-21.  Moving to near the rear of Appellant's vehicle, the officer then used his portable radio to call Appellant's Pennsylvania license in to dispatch, request another Beaver Township patrol car for backup, and summon the Springfield Township K9 unit.  *Id.* at 21, 39.

{¶114}  The Beaver patrol car was on the opposite side of the township and took ten minutes to arrive.  *Id.* at 39.  However, the K9 unit was on patrol near the eastern township line by the gas station.  *Id.* at 58.  The lead officer estimated the K9 unit arrived within two to three minutes of being requested.  *Id.* at 23.  The K9 officer's testimony confirmed he heard the traffic stop over the radio and drove less than a mile to reach the gas station from where he was parked when summoned.  *Id.* at 58-59.

**{¶115}** During that time, the lead officer received confirmation from dispatch that Appellant's license was valid and he had no outstanding warrants. Before the citation writing could commence, Appellant began declaring, "if you guys want to search my car, the answer is no, I'm not going to give you consent." *Id.* at 24, 40. The officer replied, "I didn't' even ask for consent, why did you bring that up?" Appellant reasserted his accusations of racial profiling. *Id.* at 24. The officer testified, "there's no way I could have wrote him a citation at this point" and said his partner could not either "[b]ecause the gentleman was showing a lot of aggressive behavior." *Id.* at 42-43.

**{¶116}** Upon the arrival of the K-9 unit, the lead officer followed his standard practice and "briefed" the K-9 officer about the facts after which the dog was deployed. *Id.* at 24-25, 59. Appellant complained about the dog, saying they were not allowed to do this and the dog would not hit on his car. However, the dog indicated there were drugs in the vehicle when reaching the seam of the passenger door, prompting a search of the interior of the vehicle (where a half of a marijuana blunt was found in the ashtray followed by multiple bags of crack cocaine in the pockets of clothing along with bundles of cash and a bag of marijuana). *Id.* at 25-26. The K-9 officer testified he circled the vehicle with the dog on a leash, noting the Belgian Malinois breed works fast. *Id.* at 60-61.

**{¶117}** Notably, delay before arrival of a K9 unit is not attributable to the officer conducting the traffic stop if the stop was prolonged due to the defendant's own conduct during the stop. *See, e.g., State v. Jackson*, 2014-Ohio-2249, ¶ 30 (7th Dist.) ("appellant does not explain how any delay would be attributable to officers where appellant refused to step out of his car during the stop and where he insisted on waiting for a sergeant to be called to the scene"). Appellant's initial verbal and physical aggression delayed the mission from even commencing until after they exited the store and returned to the vehicle to retrieve the license. The officer could then make standard confirmations with dispatch.

**{¶118}** The officer did not cause the stop to be "prolonged beyond the time reasonably required to complete th[e] mission" of the traffic stop. *Rodriguez*, 575 U.S. at 354-355, quoting *Caballes*, 543 U.S. at 407. The testimony indicates the stop was not extended for the dog's arrival. A citation is not generally issued in a mere two to three minutes.

Case No. 25 MA 0064

{¶119} Moreover, Appellant continued to engage with the officers, preventing them from starting to write the citation and prompting them to answer him while making acceptable brief inquiries. *See id.* at 355. After the dog's arrival, the "briefing" of the K9 officer was standard, and as the term suggests, brief. The briefing was immediately followed by a "fast" dog's free air sniff around the vehicle's exterior. The stop, already delayed by Appellant's behavior, was not "measurably" extended by this process. *Id.*, quoting *Johnson*, 555 U.S. at 333.

{¶120} We further point out Appellant's prior and continuing conduct made it difficult for the Beaver Township officers to turn their eyes from him to complete their traffic mission, which prompted their call for back up. The dog was deployed before the backup Beaver Township officer arrived and during the time it was reasonably taking for the traffic stop. Consequently, we need not move to the question of whether there was reasonable suspicion for a further investigatory detention.

{¶121} Regardless, there was reasonable suspicion supporting a further detention for a K-9 sniff. The lead officer testified he was behind Appellant's vehicle heading south on Route 7 in Beaver Township when he noticed it had a Pennsylvania license plate hanging crooked due the absence of one of the top bolts. (9/24/14 Tr. 9); (St.Ex. 2). As evident in the other photograph submitted as evidence at the suppression hearing, the SUV had very darkly tinted windows. (St.Ex. 1). Appellant made an abrupt turn into a plaza in North Lima, while the officer continued through an intersection and parked at a different corner.

{¶122} The officer watched Appellant exit his vehicle while adjusting his clothing, enter a pizza shop briefly, and exit the store with nothing in his hands while adjusting his clothing yet again. *Id.* at 10-12. The officer also noticed Appellant looking around as if "worried" about the patrol car. *Id.* at 11-12. The officer ran the plate and noticed the vehicle was registered to a person who lived in Midland, Pennsylvania, a distance away that an officer and a court can take notice. *Id.* at 11 (the person was Appellant).

{¶123} Then, when Appellant left the business' parking lot, he started driving from the general direction from which he came (north), although on a different route (South Avenue). He stopped at the red light at the South Avenue intersection with Western

Reserve Road, where traffic heading straight would enter a freeway towards Youngstown. Although he chose to turn left onto Western Reserve Road's bridge over the freeway, he did not activate his turn signal until he was already in the intersection, thus failing to signal the turn 100 feet in advance as required by traffic law. *Id.* at 13; R.C. 4511.39(A) ("a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning"), (B) (a minor misdemeanor unless one or more traffic convictions in the prior year, which can result in an increase to a misdemeanor of the third or fourth degree).

**{¶124}** As the officer articulated, this left turn put Appellant on a path toward making a complete circle in his travels, which added to his suspicion. *Id.* at 12. After stopping for the next light (on the same bridge), Appellant then changed to the right lane and pulled into the gas station on the corner. As Appellant made this turn, the officer activated his lights to initiate the stop for the turn signal violation.

**{¶125}** The officer found it odd that Appellant then slowly rolled his car up to a gas pump. Next, Appellant immediately exited the vehicle and engaged in highly suspicious conduct, as recited above when discussing the delay caused by Appellant. He was disobedient, loud, accusatory, and aggressive. He refused multiple commands to stop and return to the vehicle and then physically threw the officers off his arms as they attempted to stop him from entering the store.

**{¶126}** As the lead officer articulated, it seemed as if Appellant was attempting to lure them away from the vehicle and/or to signal to someone else that he was being pursued. After claiming he was in a hurry and becoming less physical, they went outside to retrieve his license from the vehicle for reporting to dispatch. Appellant continued accusing the officers of racial profiling and told them he was refusing consent to a vehicle search, even though they did not ask him about this topic.

**{¶127}** Although the lead officer answered on recross-examination that Appellant "didn't give me any indications of narcotics," this was in response to defense counsel's question, "What indicators of narcotics did Mr. Craft give to you?" Counsel previously made it evident that his use of the word "indicators" was in reference to drug *use*, not drug trafficking or possession. That is, counsel asked whether the officer was "trained to detect

indicators whether or not someone is under the influence of narcotics . . ." *Id.* at 42, 51. Finally, the officer specifically testified his suspicions in calling for a drug sniff by the dog were based on his own experience and training in drug detection, including as a member of the area drug task force. *Id.* at 49-50, 53.

**{¶128}** As explained by the Ohio Supreme Court, in evaluating an extended detention for a drug dog sniff, *the totality of circumstances are considered, rather than determining whether each circumstance would be suspicious on its own*. *Batchili*, 2007-Ohio-2204, at ¶ 17-19 (reasonable suspicion for drug dog sniff where driver did not immediately pull over, had a nervous demeanor, made a conflicting statement on vehicle ownership, the windows were tinted, the cargo compartment was in disarray with blankets over boxes, and the vehicle smelled of air freshener). We also point out, "an officer need not artfully articulate his justifications as we view the evidence in the record regarding the specific facts the officer stated that he had before him." *State v. Koczwara*, 2014-Ohio-1946, ¶ 16 (7th Dist.). The reasonable suspicion test looks at the specific "articulable" facts. *Terry*, 392 U.S. at 21. Plus, the court can evaluate any rational inferences to be derived from those facts. *Id.* Notably, the required suspicion need not rise to the level of probable cause for arrest. *Id.* at 27. Here, the totality of the circumstances demonstrated more than an "inchoate hunch" but gave rise to a reasonable particularized suspicion warranting the brief K9 sniff. *See id*.

**{¶129}** For the alternative reasons set forth, this assignment of error is overruled.

<u>NO CONTEST PLEA</u>

**{¶130}** Appellant's fourth assignment of error contends:

"The trial court erred in accepting Mr. Craft's no-contest plea because it failed to advise him of the effect of his plea as required by Crim.R. 11(C)(2)(b) and 11(B)(2)."

**{¶131}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Veney*, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11 was adopted to instruct trial courts on the procedure to utilize in accepting pleas. *Id.* The advisement on the effect of a plea is a non-constitutional right. *State v. Griggs*, 2004-Ohio-4415, ¶ 12 (where the Supreme Court also concluded although the rule provides an effect of a guilty plea is "a

complete admission of the defendant's guilt," the totality of the circumstances showed he understood this concept).[5]

**{¶132}** Traditionally, the Ohio Supreme Court requires a defendant challenging the advisement on non-constitutional rights to demonstrate both error and prejudice. *Veney* at ¶ 14-17, 22 (in contrast, a defendant challenging the advisement on constitutional rights need not show prejudice, as the plea is automatically invalid). The Court explained the error in advising on a non-constitutional right could not be established (in order to move to the prejudice test) unless there was a showing of a lack of substantial compliance with the rule. *Id.* ¶ 14-16, 27-28 (thus, full compliance with a non-constitutional right was satisfied by substantial compliance; in contrast, an error in advising on a constitutional requirement was established by a lack of strict compliance with the rule). Substantial compliance existed if, under the totality of the circumstances, the defendant subjectively understood the implications of the plea and the rights waived, including the consequences of the waiver. *Id.* at ¶ 15-16.

**{¶133}** The Court subsequently reiterated the "traditional rule" places a burden on the defendant to show prejudice in order to seek vacation of a plea based on a faulty advisement of a non-constitutional aspect of Crim.R. 11. *State v. Dangler*, 2020-Ohio-2765, ¶ 13-17, citing *Veney* at ¶ 17. In evaluating prejudice, the Supreme Court instructs us to consider whether the plea would have been made in the absence of the lack of full compliance. *Id.* at ¶ 16. In a direct appeal after a partially compliant non-constitutional advisement, the plea shall not be vacated unless the "face of the record" shows the defendant would not have entered the plea but for the issue raised. *Id.* at ¶ 23-24 (upholding the plea where there was "nothing in the record indicating [he] would not have entered his plea had he been more thoroughly informed of the details").

**{¶134}** Appellant does not allege a showing of prejudice could be made in this case. Instead, he points to the exception to the general rule, which is applicable when a non-constitutional rights challenge demonstrates a "complete" lack of compliance.

---

[5] The Supreme Court indicated the meaning of a guilty plea as a complete admission of guilt was self-evident. *Griggs*, 2004-Ohio-4415, at ¶ 12-14, 19 (the guilty plea satisfied and subsumes the required admission of guilt). We do not suggest the bare term "no contest plea" is similarly ordinary, but we note the totality of the circumstances was still considered in determining subjective understanding and compliance with the rule. *See id.* at ¶ 12-19.

Specifically, the "*complete* failure" to advise a pleading felony defendant about a non-constitutional right is reversible on direct appeal without a showing of prejudice. (Emphasis original.) *Dangler* at ¶ 15, citing *State v. Sarkozy*, 2008-Ohio-509, ¶ 22 (finding a complete failure where the court did not orally mention post-release control at all).

{¶135} In attempting to simplify the analysis, the *Dangler* Court set forth the following questions: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17 (noting its prior cases "muddled the analysis"). Upon so holding, the *Dangler* Court concluded the trial court's general advisement that the plea would subject the defendant to a lifetime sex offender registration obligation did not "completely fail" to comply with Crim.R. 11(C)(2)(a)'s requirement to explain the maximum penalty for a sex offender even though the court failed to explain in-person verification requirements, community notice, and residence restrictions. *Id.* at ¶ 4, 22-23 (where the defendant was advised of the maximum prison term and fine). Essentially, when no prejudice exists, the precise level of compliance is irrelevant as long as the advisement could not be described as a complete failure to comply.

{¶136} Crim.R. 11(C)(2) states the court "shall not accept a plea of guilty or no contest without first addressing the defendant personally . . . and doing all of the following":

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) *Informing the defendant of and determining that the defendant understands the effect of the plea of* guilty or *no contest*, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront

witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

(Emphasis added.) Crim.R. 11(C)(2).

**{¶137}** Appellant contests only the emphasized portion of the sentence in Crim.R. 11(C)(2)(b). He claims the court failed to inform him of the effect of the no contest plea. In so arguing, Appellant suggests the definition for (C)(2)(b)'s phrase "the effect of the plea of . . . no contest. . ." is contained solely in division (B)(2) of Crim.R. 11.

**{¶138}** This division contains the internal caption "Effect of Guilty or No Contest Plea." Crim.R. 11(B). It begins, "With reference to the offense or offenses to which the plea is entered:" and then sets forth three subdivisions. After the first subdivision says a guilty plea is a complete admission of guilt, the next subdivision explains:

The plea of no contest is not an admission of [the] defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.

Crim.R. 11(B)(2).

**{¶139}** Appellant's argument revolves around this content in (B)(2) without acknowledging the third and final subdivision in Crim.R. 11(B) provides another example under the "Effect of . . . No Contest Plea" caption. That is, "the court . . . shall proceed with sentencing" after a plea of guilty or no contest is accepted. Crim.R. 11(B)(3).

**{¶140}** Here, the state confesses error for only this assignment of error and attempts to convince this court the other assignments of error are moot. However, as reviewed in a prior section above, the state's mootness argument in the *partial* confession of error lacks merit. In any event, the state's mootness argument would only arise if the no contest plea argument had merit. As also explained above, a confession of error is not binding, and we do not ignore the record before us showing Appellant's no contest plea was valid.

**{¶141}** The state's confession of error on the subject cites two cases that do not support its conclusion. The state cites a distinguishable case where we repeated the contents of Crim.R.11(B)(2) (the no contest plea is not an admission of guilt but an admission of facts in the indictment, which shall not be used against the defendant in a subsequent criminal or civil case) and then observed this was information to be conveyed to the defendant on the effect of his no contest plea. *State v. Dosch*, 2009-Ohio-6534, ¶ 12 (7th Dist.). Nevertheless, we *rejected* the defendant's argument seeking vacation of the plea due to a failure to advise him on those effects of the no contest plea in Crim.R. 11(B). *Id.* at ¶ 13 (and found a lack of prejudice). Our decision vacating the plea was based on a missing advisement on a *constitutional* right. *Id.*

**{¶142}** The other case cited by the state also repeats the content of Crim.R. 11(B)(2) as information related to the effect of a no contest plea. *State v. Lazazzera*, 2013-Ohio-2547, ¶ 13-14 (7th Dist.) (noting a traffic rule identically says a no contest plea is not an admission of guilt but admits the facts in the complaint and cannot be used in a later civil or criminal proceeding), citing *Dosch* at ¶ 12. In the more recent case, the trial court merely stated, "If you are pleading no contest, you are saying that you are not contesting this charge so you are allowing me to find that you are guilty of it without going through a trial and being proven guilty. Do you understand you are giving up your right to have a trial?" *Id.* at ¶ 17. After the defendant answered in the affirmative, the court asked if he had any question about that, and the defendant said he did not and then voiced his no contest plea. *Id.*

**{¶143}** Although we found a lack of substantial compliance, we specifically said this was not a complete failure to comply. *Id.* at ¶ 2, 16-20. We opined, "it appears from a reading of the advisement that the trial court was attempting to inform Lazazzera that his no contest plea is an admission of the facts and permits the trial court to find him guilty without going through a trial." *Id.* at ¶ 20, citing *State ex rel. Stern v. Mascio*, 75 Ohio St.3d 422, 424 (1996) (the essence of a no contest plea is the accused cannot present a defense at trial or otherwise). We concluded there was partial compliance with the rule on the effect of the no contest plea, which gave rise to a prejudice requirement, and we then found no prejudice. *Id.* at ¶ 20-28.

**{¶144}** Appellant cites a case where this court vacated a no contest plea after finding a complete failure to comply with the requirement to inform the defendant of the effect of the no contest plea under Crim.R. 11(B)(2). *State v. Alberini*, 2024-Ohio-4817, ¶ 4-7 (7th Dist.), citing Crim.R. 11(E) ("In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such pleas without first informing the defendant of the effect of the plea of guilty, no contest, and not guilty."). The state conceded the error in that case as well. *Id.* at ¶ 7. Yet, in that case: "the trial court *did not address Appellant at all* during the change of plea hearing. No mention was made of the effect of a no contest plea." (Emphasis added.) *Id.* at ¶ 6. We also note the trial court must be provided with an explanation of circumstances for a misdemeanor no contest plea, as relevant in the cited case. R.C. 2937.07.

**{¶145}** The Ohio Supreme Court recently observed a trial court shall not accept a plea of no contest without first ensuring the plea is voluntary with understanding of "the charges, the maximum penalty involved, and the effect of the plea, *including its effect on the defendant's rights*." (Emphasis added.) *State v. Gowdy*, 2025-Ohio-5575, ¶ 18. In concluding the defendant "understood the consequences" of his plea, the Court emphasized how the trial court "ensured that [he] understood the effects of his plea, including that he was waiving his right to a jury trial . . ." *Id.* at ¶ 34.

**{¶146}** Just prior to these Supreme Court statements, we explained a similar concept by holding, "the fact that certain items are 'part' of the effect of a guilty plea does not mean the guilty plea does not have other effects." *State v. Qiu*, 2025-Ohio-5485, ¶ 30 (7th Dist.) (pointing out the court advised the defendant of the rights he would be waiving and the risks regarding immigration as effects of his guilty plea), citing *State v. Oliver*, 2021-Ohio-1247, ¶ 20 (7th Dist.) (where we said the guilty plea is a complete admission and the court's ability to proceed to sentencing are both part of the effect of the guilty plea).

**{¶147}** In addition, our *Qiu* case observed the trial court's ability to proceed to judgment and sentence upon accepting the plea is part of the "effect of the plea" and is specifically given as an example in Crim.R. 11(B)(2). *Id.* at ¶ 16, 30-31, 37. We held the failure to literally recite "a guilty plea is a complete admission of guilt" was not a complete

failure to comply with Crim.R. 11(C)(2)(b) where the meaning of the phrase was apparent from the totality of the plea colloquy. *Id.* at ¶ 26-27 (after alternatively pointing to precedent holding a guilty plea is obviously an admission of guilt). We then further supported our conclusion by pointing to the court's compliance with the second part of the sentence in Crim.R. 11(C)(2)(b) ("that the court, upon acceptance of the plea, may proceed with judgment and sentence"), which consequence is listed in Crim.R. 11(B)(3) *as being part of the effect of the plea*. *Id.* at ¶ 31, 35, 37 (concluding the trial court discussion with the defendant plainly addressed this "effect of his plea").

{¶148} Next, we observe a written plea agreement and a defendant's reply to a judge's question about it can be considered under the totality of the circumstances to determine a defendant's understanding. *State v. Barker*, 2011-Ohio-4130, ¶ 25 (even in determining whether a defendant was fully advised of a constitutional right); *State v. Griggs*, 2004-Ohio-4415, ¶ 10, 16 (viewing the written plea form and the defendant's oral assurances on his understanding of the effect of a guilty plea). The trial court asked Appellant if the contents of the plea agreement were fully explained to him and if he signed the agreement, and he answered both questions in the affirmative. (5/14/25 Tr. 8-9).

{¶149} Appellant says the written plea did not assist to inform him of the effect of the no contest plea because it was a form agreement originally intended for a guilty plea where the parties inserted no contest into a whited-out spot in the first paragraph and then wrote "no contest" in three additional places after crossing out "guilty." The parties also crossed out the following two statements explaining the effect of a guilty plea: "my guilty plea is an admission of guilt and a waiver of . . ." and "my plea of guilty is a complete admission of my guilt . . ."

{¶150} In a sense, those strikeouts indicated to Appellant what his no contest plea was not, distinguishing it from a guilty plea (along with distinguishing it from a not guilty plea by stating he was withdrawing his former plea of not guilty). Thereafter, the written plea also set forth various general effects of a plea (whether guilty or no contest), including the waived constitutional rights and other actual and potential ramifications of the plea. Notably, the agreement also said the no contest plea constitutes a waiver of defenses to the charges and the specification. *See Lazazzera*, 2013-Ohio-2547, at ¶ 20 (7th Dist.)

(advising the defendant he would be found guilty without an opportunity to present a defense and is the essence of the plea and essentially conveyed he was admitting the facts in the complaint), citing *State ex rel. Stern*, 75 Ohio St.3d 422, 424 ("The essence of the 'no contest' plea, is that the accused cannot be heard in defense.").

**{¶151}** Then, at the plea hearing, it is undisputed the court personally reviewed with Appellant the required constitutional rights being waived. *See* Crim.R. 11(C)(2)(c) ("the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself"). The court personally ensured he understood another effect of the plea was that he was giving up the right to appeal issues that would have been presented at the waived jury trial if the jury rendered a verdict against him. *See Gowdy*, 2025-Ohio-5575, at ¶ 30; *Lazazzera* at ¶ 20.

**{¶152}** When the prosecutor began the plea hearing by accidentally mentioning a guilty plea, defense counsel corrected the prosecution by pointing out Appellant was entering a no contest plea and explained that Appellant was entering a plea of no contest in order to maintain certain rights to appeal. *Id.* at 2-3, 10 (further addressing the importance of maintaining his right to appeal the denial of his pretrial motions).

**{¶153}** Notably, the court specifically informed Appellant and determined he understood another *effect of his no contest plea:* "if I accept your plea, I could proceed immediately with judgment and sentence . . ." (5/14/25 Tr. 6). Again, this particular effect is not only specified in the same sentence as the general language "understands the effect of the plea of guilty or no contest" in Crim.R. 11(C)(2)(b), *it is also expressly listed as an example of the effect of a guilty or no contest plea in Crim.R. 11(B)(3)*.

**{¶154}** The colloquy indicated the reason the court could enter judgment and proceed to sentencing on the recited charges was because Appellant was *withdrawing his former not guilty plea* and entering a no contest plea to the charges of first-degree felony trafficking in cocaine, first-degree felony possession of cocaine, and forfeiture of money in a drug case. *See* Crim.R. 11(C)(2)(a). The court also advised him of the

maximum prison term and fine, his ineligibility for community control, and post-release control.  *See id.*

{¶155}  We also point out the prosecutor observed, "with a no contest plea, when he enters the plea he also has to do a stipulation to a finding of guilt."  When the court inquired whether Appellant would recite the stipulation, and the prosecutor restated, "he would have to agree to stipulate to a finding of guilt."  The court then recited the indicted charges again and asked Appellant how he wished to plead to which he replied, "No contest."  *Id.* at 9-10.  The court immediately asked Appellant, "With a stipulation of a finding of guilt?"  *Id.*  At this point, defense counsel interjected:

> We would stipulate to the facts laid before the Court.  And - - and then, obviously, to the Court's findings with - -  with the understanding - - just for clarification, so Mr. Craft is aware, because I know I can - - I can feel him tense up when you had mentioned his right to an appeal.  He is waiving his right to appeal for what would happen at trial, he is not waiving his rights to appeal to anything that happened pretrial.

*Id.* at 10.

{¶156}  *The court asked Appellant if he understood this, and he answered in the affirmative*.  *Id.*  The importance Appellant placed on entering a no contest plea so he could proceed to an appeal of his pretrial motions (such as speedy trial and suppression) was evident and strongly works against his argument that he was not informed of or did not understand the effect of the no contest plea.  *See Lazazzera*, 2013-Ohio-2547, at ¶ 20 (7th Dist.); *see also Gowdy*, 2025-Ohio-5575, at ¶ 30 (where the Supreme Court indicated information on the plea's effects on the right to appeal would be one of the effects of the plea), citing *State v. Engle*, 1996-Ohio-179, ¶ 10-12 (where the prosecutor misstated the right to appeal pretrial rulings after the guilty plea and the trial court failed to correct the misstatement, the defendant did not understand *the effect of the plea*).

{¶157}  Although not required in a felony case, the state recited additional facts on the record.  *See City of Girard v. Giordano*, 2018-Ohio-5024, 13, 19 (where the Supreme Court pointed out an explanation of circumstances is only required for misdemeanors, not felonies).  Thereafter, the defense agreed the stipulation Appellant made to the court was

a stipulation to the following facts recited by the state: on January 4, 2014, a stop was conducted at South Avenue and Western Reserve Road in Beaver Township; during a search of his vehicle at the Shell gas station, the police found cocaine packaged for distribution in an amount exceeding the amount for a first-degree felony; and he possessed $8,136 believed to be secured through drug transactions. *Id.* at 11-13 (with the court clearly having been presented with a written statement of the facts, as the court supplied the names of the streets at the intersection when the prosecutor forgot).

**{¶158}** In sum, the no contest plea was contrasted from a not guilty plea and from a guilty plea (with the strikeouts from the written plea agreement indicating a guilty plea would have been a complete admission). At the plea hearing, Appellant agreed his no contest plea involved a "stipulation" to the facts and to a finding of guilt after the court directly connected the withdrawal of the not guilty plea and the entry of the no contest plea to the recited facts charged in the indictment. Under Crim.R. 11(B)(2), "The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment . . ." Appellant was not asked to admit his guilt and was relevantly asked to stipulate to the facts prompting him to say he understood he was stipulating to the facts laid before the court by entering his no contest plea. The Supreme Court does not require literal recitation of the contents of the rule (even on constitutional rights, which are subject to the strict compliance test and require no showing of prejudice). *State v. Miller*, 2020-Ohio-1420, ¶ 17, 21 (warning the reviewing court to refrain from raising form over substance). The proper focus is not on "precise verbiage" of the rule; rather, the focus lies "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler*, 2020-Ohio-2765, at ¶ 12. Accordingly, the failure to verbally declare the precise language from Crim.R. 11 (such as the word "admission") is not dispositive of the complete failure test.

**{¶159}** Although the court did not tell Appellant his plea "shall not be used against [him] in any subsequent civil or criminal proceeding," this is only one aspect of the effect of a no contest plea (and is one that does not result in a waiver of a right). Crim.R. 11(B)(3). Plus, it was clear he understood the plea could not be used against him in the

subsequent criminal appeal proceeding so as to bar review of his pretrial motions (unlike a guilty plea, which waives most pretrial matters). *See Village of Montpelier v. Greeno*, 25 Ohio St.3d 170, 181-172, fn. 2 (1986) (a pretrial ruling on an issue such as speedy trial is waived by a guilty plea but preserved by a no contest plea); Crim.R. 12(H) ("Effect of Plea of No Contest. The plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion, including a pretrial motion to suppress evidence.")

{¶160} Under the circumstances presented in this appeal contesting a non-constitutional rights advisement, there was not a "complete failure" to inform the defendant of the effect of a no contest plea. A showing of prejudice is therefore required. The existence of prejudice is not alleged on appeal and is not supported by the record before us in any event.

{¶161} The fact a no contest plea "shall not be used against [the defendant] in any subsequent civil or criminal proceeding" is an effect of his plea that does not waive any right but rather merely advises him of an additional benefit of the no contest plea (as contrasted to a guilty plea, which the plea agreement demonstrates, through crossed out words, would have been a complete admission of guilt). *See Lazazzera*, 2013-Ohio-2547, ¶ 24 (7th Dist.) (while evaluating prejudice, this court noted, "the deficiency in the advisement is the failure to advise [him] of the beneficial effect of the plea"). The record shows Appellant desired to plead no contest to move forward with an appeal of the pretrial motion denials (speedy trial and suppression). There is no allegation or indication on the record that Appellant would not have pled no contest if the court explicitly quoted the omitted language from Crim.R. 11(B)(2) after ensuring he understood all of the other effects of the plea. *See generally Dangler*, 2020-Ohio-2765, at ¶ 23-24 (in the direct appeal from a partially compliant non-constitutional advisement, the plea shall not be vacated unless the "face of the record" shows the defendant would not have entered the plea but for the issue raised). This assignment of error is overruled, and the no contest plea is upheld.

## SUA SPONTE PLAIN ERROR IN SENTENCING

**{¶162}** Appellant does not raise an issue with the trial court imposing a sentence on both offenses. However, this court has noticed a plain error that must be remedied for Appellant so that his record only contains one conviction.

**{¶163}** At the plea hearing, the state pointed out the offenses would be merged at sentencing, and defense counsel agreed. (5/14/24 Tr. 4). At the sentencing hearing, the state followed through with its agreement to recommend five years in prison, and the defense joined the recommendation. The court recited the offenses to which Appellant pled guilty: first-degree felony trafficking in cocaine and first-degree felony possession of cocaine, along with the attached specifications related to the forfeiture of money.

**{¶164}** After finding Appellant was not amenable to community control and prison was consistent with the purposes and principles of sentencing, the court sentenced Appellant to five years in prison, as requested. The state did not elect which merged offense would receive the sentence, and the court did not orally specify which offense was receiving the sentence. (6/24/25 Tr. 5-6).

**{¶165}** In the sentencing entry, the trial court specifically agreed, "Counts One and Two merge for purposes of sentencing." However, the court then imposed five years in prison *on each count* (impliedly concurrent). This was plain error, as we have explained in other cases sua sponte recognizing this plain error. *See, e.g., State v. Holcomb*, 2021-Ohio-2352, ¶ 40-48 (7th Dist.).

**{¶166}** A "conviction," as the term is used in R.C. 2941.25(A), can only be entered on one offense after the merger of two offenses, and thus, the trial court must memorialize which count the state has elected and which count thus received the court's sentence. *See State v. Whitfield*, 2010-Ohio-2, at ¶ 13, 24 ("for purposes of R.C. 2941.25(A), a conviction is a determination of guilt and the ensuing sentence . . . The defendant is not 'convicted' for purposes of R.C. 2941.25(A) until the sentence is imposed."). When a trial court merges two offenses, only one offense remains for sentencing and a sentence can only be entered on that remaining offense. *Id.* at ¶ 17-18.

**{¶167}** Merging offenses is not accomplished by running the sentences concurrently; i.e., concurrent sentences cannot be imposed on merged offenses. *State*

*v. Damron*, 2011-Ohio-2268, ¶ 17 (where the Ohio Supreme Court emphasized, "the imposition of concurrent sentences is not the equivalent of merging allied offenses"); *State v. Tapscott*, 2012-Ohio-4213, ¶ 48 (7th Dist.) (sentencing concurrently on merged counts does not satisfy the merger doctrine, as no sentence at all should be entered on one of the two merged counts). The error of entering a sentence on a merged count is not harmless merely because concurrent sentences were imposed. As the Supreme Court has explained, "even when the sentences are to be served concurrently, a defendant is prejudiced by having more convictions than are authorized by law." *State v. Underwood*, 2010-Ohio-1, ¶ 31 (finding plain error even where it is a jointly recommended sentence), citing *State v. Yarbrough*, 2004-Ohio-6087, ¶ 96-102.

**{¶168}** "As this court and the Ohio Supreme Court have stated multiple times, two merged counts cannot both receive sentences, even concurrent sentences. This is said to constitute plain error." *Holcomb*, 2021-Ohio-2352, at ¶ 47 (7th Dist.), quoting *State v. Smith*, 2013-Ohio-756, ¶ 74 (7th Dist.). In sum, the trial court's imposition of a five-year sentence on both counts was an obvious error that affected Appellant's right to be convicted of only one of the two merged offenses.

**{¶169}** In a case where the state elected an offense, a new sentencing hearing is not required and the trial court can be ordered to issue a nunc pro tunc entry. *Id.*, citing *State v. Williams*, 2016-Ohio-7658, ¶ 31-32 (no need to remand for new sentencing hearing where the state elected an offense at the prior hearing and the trial court had no discretion to impose sentences on both of the merged offenses).[6] Here, however, there was no election of offenses at sentencing (or mention by the court of which count would receive the sentence). Thus, a nunc pro tunc entry cannot be ordered, and resentencing is required for election of an offense to receive the sentence and the imposition of the five-year sentence on that offense only. *Smith* at ¶ 74 ("The remedy is to remand for a limited resentencing hearing so that the prosecution can select which of the merged offenses it wishes the court to proceed on for sentencing."), citing *Whitfield*, 2010-Ohio-2, at ¶ 21–22 (finding the appellate court impermissibly intruded on the state's right to

---

[6] A different holding in *Williams* was abrogated in *State v. Henderson*, 2020-Ohio-4784, which held a merger issue did not result in a void sentence and was subject to the post-conviction res judicata bar. The case at bar is a direct appeal, making it Appellant's chance to ensure only one conviction appears on his record.

elect by ordering which offense to vacate) and *Maumee v. Geiger*, 45 Ohio St.2d 238, 244 (1976).

CONCLUSION

{¶170} For the foregoing reasons, Appellant's assignments of error are overruled. We uphold the decisions denying the speedy trial arguments, overruling the suppression motion, and entering a finding of guilt on the no contest plea. Accordingly, the trial court's judgment is affirmed in part. However, the judgment of the sentence is reversed, and the case is remanded for a limited resentencing hearing where the state shall elect which merged offense will receive a sentence and where the trial court shall impose sentence on only that offense.

Waite, P.J., concurs.

Dickey, J. concurs.

_____

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled. It is the final judgment and order of this Court that the trial court's judgment is affirmed in part. However, the judgment of the sentence is reversed. We hereby remand this matter to the trial court for a limited resentencing hearing where the state shall elect which merged offense will receive a sentence and where the trial court shall impose sentence on only that offense according to law and consistent with this Court's Opinion. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**